Jeffrey KEMEZY, Plaintiff–Appellee,

v.

James PETERS, Defendant–Appellant.

Nos. 95–1860, 95–1904, and 95–2121.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1995.

Decided March 5, 1996.

Michael K. Sutherlin, Ida Coleman Lamberti (argued), Sutherlin & Associates, Indianapolis, IN, for Jeffrey Kemezy.

John H. Brooke (argued), Casey Dean Cloyd (argued), McClellan, McClellan, Brooke & Arnold, Muncie, IN, for James Peters, individually and as a Police Officer of the City of Muncie.

Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Jeffrey Kemezy sued a Muncie, Indiana policeman named James Peters under 42 U.S.C. § 1983, claiming that Peters had wantonly beaten him with the officer's nightstick in an altercation in a bowling alley where Peters was moonlighting as a security guard. The jury awarded Kemezy $10,000 in compensatory damages and $20,000 in punitive damages. Peters' appeal challenges only the award of punitive damages, and that on the narrowest of grounds: that it was the plaintiff's burden to introduce evidence concerning the defendant's net worth for purposes of equipping the jury with information essential to a just measurement of punitive damages.

Two courts have adopted the position that Peters advocates. *Adams v. Murakami,* 54 Cal.3d 105, 284 Cal.Rptr. 318, 327–330, 813 P.2d 1348, 1357–60 (1991); *Adel v. Parkhurst,* 681 P.2d 886, 892 (Wyo.1984); and see the dissent in *Keenan v. City of Philadelphia,* 983 F.2d 459, 483–84 (3d Cir.1992). But the majority view is opposed, as noted in *Hutchinson v. Stuckey,* 952 F.2d 1418, 1422

n. 4 (D.C.Cir.1992); see, e.g., *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 373 (2d Cir.1988); *Fishman v. Clancy*, 763 F.2d 485, 490 (1st Cir.1985); *Woods–Drake v. Lundy*, 667 F.2d 1198, 1203 n. 9 (5th Cir. 1982). Our decision in *Littlefield v. McGuffey*, 954 F.2d 1337, 1349 (7th Cir.1992), can be read as aligning us with the majority, although as Peters points out the plaintiff there had presented some evidence of the defendant's net worth and it is possible (though not necessary) to read our opinion as placing some minimal burden of production on the plaintiff. See *id.* at 1349–50. But we think the majority rule, which places no burden of production on the plaintiff, is sound, and we take this opportunity to make clear that it is indeed the law of this circuit.

The standard judicial formulation of the purpose of punitive damages is that it is to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct. E.g., *Memphis Community School District v. Stachura*, 477 U.S. 299, 307 n. 9, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986); *Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974). This formulation is cryptic, since deterrence is a purpose of punishment, rather than, as the formulation implies, a parallel purpose, along with punishment itself, for imposing the specific form of punishment that is punitive damages. An extensive academic literature, however, elaborates on the cryptic judicial formula, offering a number of reasons for awards of punitive damages. See, e.g., *Symposium: Punitive Damages*, 40 Ala.L.Rev. 687 (1989); *Symposium: Punitive Damages*, 56 S.Cal.L.Rev. 1 (1982); 1 Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution* § 3.11(3) (2d ed. 1993); William M. Landes & Richard A. Posner, *The Economic Structure of Tort Law*, ch. 6 (1987); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 2, pp. 9, 11–12 (5th ed. 1984). Some of these reasons are mentioned in our cases. See, e.g., *Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 508 (7th Cir.1992); *Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir.1991); *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 623 (7th Cir.1989). A review of the reasons will point us toward a sound choice between the majority and minority views.

1. Compensatory damages do not always compensate fully. Because courts insist that an award of compensatory damages have an objective basis in evidence, such awards are likely to fall short in some cases, especially when the injury is of an elusive or intangible character. If you spit upon another person in anger, you inflict a real injury but one exceedingly difficult to quantify. If the court is confident that the injurious conduct had no redeeming social value, so that "overdeterring" such conduct by an "excessive" award of damages is not a concern, a generous award of punitive damages will assure full compensation without impeding socially valuable conduct.

2. By the same token, punitive damages are necessary in such cases in order to make sure that tortious conduct is not underdeterred, as it might be if compensatory damages fell short of the actual injury inflicted by the tort.

These two points bring out the close relation between the compensatory and deterrent objectives of tort law, or, more precisely perhaps, its rectificatory and regulatory purposes. Knowing that he will have to pay compensation for harm inflicted, the potential injurer will be deterred from inflicting that harm unless the benefits to him are greater. If we do not want him to balance costs and benefits in this fashion, we can add a dollop of punitive damages to make the costs greater.

3. Punitive damages are necessary in some cases to make sure that people channel transactions through the market when the costs of voluntary transactions are low. We do not want a person to be able to take his neighbor's car and when the neighbor complains tell him to go sue for its value. Guido Calabresi & A. Douglas Melamed, "Property Rules, Liability Rules, and Inalienability: One View of the Cathedral," 85 *Harv.L.Rev.* 1089, 1124–27 (1972). We want to make such expropriations valueless to the expropriator

and we can do this by adding a punitive exaction to the judgment for the market value of what is taken. This function of punitive damages is particularly important in areas such as defamation and sexual assault, where the tortfeasor may, if the only price of the tort is having to compensate his victim, commit the tort because he derives greater pleasure from the act than the victim incurs pain.

4. When a tortious act is concealable, a judgment equal to the harm done by the act will underdeter. Suppose a person who goes around assaulting other people is caught only half the time. Then in comparing the costs, in the form of anticipated damages, of the assaults with the benefits to him, he will discount the costs (but not the benefits, because they are realized in every assault) by 50 percent, and so in deciding whether to commit the next assault he will not be confronted by the full social cost of his activity.

5. An award of punitive damages expresses the community's abhorrence at the defendant's act. We understand that otherwise upright, decent, law-abiding people are sometimes careless and that their carelessness can result in unintentional injury for which compensation should be required. We react far more strongly to the deliberate or reckless wrongdoer, and an award of punitive damages commutes our indignation into a kind of civil fine, civil punishment.

Some of these functions are also performed by the criminal justice system. Many legal systems do not permit awards of punitive damages at all, believing that such awards anomalously intrude the principles of criminal justice into civil cases. Even our cousins the English allow punitive damages only in an excruciatingly narrow category of cases. See, e.g., *AB v. South West Water Services Ltd.*, [1993] 1 All E.R. 609 (Ct.App.1992). But whether because the American legal and political cultures are unique, or because the criminal justice system in this country is overloaded and some of its functions have devolved upon the tort system, punitive damages are a regular feature of American tort cases, though reserved generally for intentional torts, including the deliberate use of excess force as here. This suggests additional functions of punitive damages:

6. Punitive damages relieve the pressures on the criminal justice system. They do this not so much by creating an additional sanction, which could be done by increasing the fines imposed in criminal cases, as by giving private individuals—the tort victims themselves—a monetary incentive to shoulder the costs of enforcement.

7. If we assume realistically that the criminal justice system could not or would not take up the slack if punitive damages were abolished, then they have the additional function of heading off breaches of the peace by giving individuals injured by relatively minor outrages a judicial remedy in lieu of the violent self-help to which they might resort if their complaints to the criminal justice authorities were certain to be ignored and they had no other legal remedy.

What is striking about the purposes that are served by the awarding of punitive damages is that none of them depends critically on proof that the defendant's income or wealth *exceeds* some specified level. The more wealth the defendant has, the smaller is the relative bite that an award of punitive damages not actually geared to that wealth will take out of his pocketbook, while if he has very little wealth the award of punitive damages may exceed his ability to pay and perhaps drive him into bankruptcy. To a very rich person, the pain of having to pay a heavy award of damages may be a mere pinprick and so not deter him (or people like him) from continuing to engage in the same type of wrongdoing. *Zazú Designs v. L'Oréal, S.A., supra,* 979 F.2d at 508. What in economics is called the principle of diminishing marginal utility teaches, what is anyway obvious, that losing $1 is likely to cause less unhappiness (disutility) to a rich person than to a poor one. (This point, as the opinion in *Zazú Designs* emphasizes, does not apply to institutions as distinct from natural persons. *Id.* at 508–09.) But rich people are not famous for being indifferent to money, and if they are forced to pay not merely the cost of the harm to the victims of their torts but also some multiple of that cost they are likely to think twice before engaging in such expen-

sive behavior again. Juries, rightly or wrongly, think differently, so plaintiffs who are seeking punitive damages often present evidence of the defendant's wealth. The question is whether they *must* present such evidence—whether it is somehow unjust to allow a jury to award punitive damages without knowing that the defendant really is a wealthy person. The answer, obviously, is no. A plaintiff is not required to seek punitive damages in the first place, so he should not be denied an award of punitive damages merely because he does not present evidence that if believed would persuade the jury to award him even more than he is asking.

Take the question from the other side: if the defendant is not as wealthy as the jury might in the absence of any evidence suppose, should the plaintiff be required to show this? That seems an odd suggestion too. The reprehensibility of a person's conduct is not mitigated by his not being a rich person, and plaintiffs are never required to apologize for seeking damages that if awarded will precipitate the defendant into bankruptcy. A plea of poverty is a classic appeal to the mercy of the judge or jury, and why the plaintiff should be required to make the plea on behalf of his opponent eludes us.

The usual practice with respect to fines is not to proportion the fine to the defendant's wealth, but to allow him to argue that the fine should be waived or lowered because he cannot possibly pay it. U.S.S.G. § 5E1.2(a); *United States v. Young,* 66 F.3d 830, 839 (7th Cir.1995). (For a rare exception, based on a special statute, see *Merritt v. United States,* 960 F.2d 15, 18 (2d Cir.1992).) The practice with regard to sanctions under Fed.R.Civ.P. 11 is similar. E.g., *Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1366 (7th Cir.1994). It is unnecessary to multiply examples. Given the close relation between fines and punitive damages, this is the proper approach to punitive damages as well. The defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay.

It ill becomes *defendants* to argue that plaintiffs *must* introduce evidence of the defendant's wealth. Since most tort defendants against whom punitive damages are sought are enterprises rather than individuals, the effect of such a rule would be to encourage plaintiffs to seek punitive damages whether or not justified, in order to be able to put before the jury evidence that the defendant has a deep pocket and therefore should be made to pay a large judgment regardless of any nice calculation of actual culpability. (The judge might not allow this, if persuaded by the suggestion in *Zazú Designs* that the defendant's net worth is irrelevant to the size of the award of punitive damages when the defendant is a corporation or other institution rather than an individual.) Individual defendants, as in the present case, are reluctant to disclose their net worth in any circumstances, so that compelling plaintiffs to seek discovery of that information would invite a particularly intrusive and resented form of pretrial discovery and disable the defendant from objecting. Since, moreover, information about net worth is in the possession of the person whose net wealth is in issue, the normal principles of pleading would put the burden of production on the defendant—which, as we have been at pains to stress, is just where defendants as a whole would want it.

Peters argues that a defendant who presents evidence of his net worth to the jury in an effort to minimize any award of punitive damages will be understood by the jury to be conceding the appropriateness of awarding punitive damages in at least the amount suggested by the defendant. This is just the kind of thinking that has so often led defendants into disaster when they decided not to put into evidence their own estimate of the damages to which the plaintiff was entitled, but instead played the equivalent of double or nothing. See, e.g., *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1230 (7th Cir.1995). Most jurors should be able to understand the structure of an argument to the effect that the defendant does not concede liability, let alone liability for punitive damages, but that if the jury disagrees it should award only a nominal amount of punitive damages because the defendant is a person of limited means.

The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab. *De-Loach v. Bevers,* 922 F.2d 618, 624 (10th Cir.1990); *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 669, 413 S.E.2d 897, 910 (1991); *DeMatteo v. Simon,* 112 N.M. 112, 115, 812 P.2d 361, 364 (Ct.App.1991). The contrary argument, accepted in *Michael v. Cole,* 122 Ariz. 450, 452, 595 P.2d 995, 997 (1979), that the insurance contract is a purely private matter between the defendant and his insured, ignores the consequence of such a view for the deterrent efficacy of punitive damages. It is bad enough that insurance or other indemnification reduces the financial incentive to avoid wrongdoing—which is why insuring against criminal liability is prohibited. It would be worse if the cost of the insurance fell, reducing the financial disincentive to engage in wrongful behavior, because the insurance company knew that its insured could plead poverty to the jury.

■ We were told by Peters' lawyer without contradiction that Peters will not be indemnified for the punitive damages that he has been ordered to pay. We have noted the inappropriateness of allowing the defendant to plead poverty if he will be indemnified not because such a plea was attempted here, but to underscore the anomaly of requiring plaintiffs seeking punitive damages always to put in evidence of the defendant's net worth. When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible. Thus, in some cases it is inadmissible, but in no cases is it required.

AFFIRMED.