Desiree **HALL**, Plaintiff and Appellee,

v.

**WAL–MART STORES, INC.;** Larry D. Moss, individually; Does I–X and Roe Corporations I–X, inclusive, Defendants and Appellants.

No. 970014.

Supreme Court of Utah.

May 12, 1998.

James M. Park, Cedar City, Andrew M. Leavitt, Las Vegas, Nevada, for Plaintiff and Appellee.

D. Williams Ronnow, St. George, for Defendants and Appellants.

ZIMMERMAN, Justice:

Wal–Mart Stores Incorporated ("Wal–Mart") appeals from a district court ruling denying its motion for a judgment notwithstanding the verdict. Desiree Hall ("Hall") sued Wal–Mart after she was struck by a vehicle driven by Larry Moss in an icy parking lot at Wal–Mart's Cedar City store. A jury found that Wal–Mart was negligent in failing to safely maintain the parking lot, and that Wal–Mart's liability for Hall's injuries was $19,800. Pursuant to a supplemental verdict on punitive damages the jury also awarded Hall $25,000 in punitive damages, finding that Wal–Mart's conduct in allowing ice and snow to accumulate in its parking lot manifested a knowing and reckless indifference toward, and disregard of, the rights of others. Wal–Mart argues that the jury had no basis on which to award punitive damages because the record does not contain any evidence of relative wealth. We affirm.

We first set forth the relevant facts and procedural history before turning to the standard of review and our analysis. After the jury returned its initial verdict that Wal–Mart was negligent, and that it should pay punitive damages, Hall's counsel indicated his intent to have an expert, Clark Gates, testify as to Wal–Mart's financial worth. Wal–Mart objected to this proposed testimony on grounds that it had never been notified that Gates was to be called as an expert.

After the judge sustained that objection, Wal–Mart then made a "general objection" to the jury proceeding to determine the amount of punitive damages on grounds that Hall had failed to provide any evidence of Wal–Mart's relative wealth. The judge, however, permitted the case to go to the jury. He stated that although no specific evidence of Wal–Mart's wealth had been introduced, "the jury knows enough about the wealth of Wal–Mart to be able to determine whether or not punitive damages would be appropriate and in what amount roughly."

The jury returned a verdict awarding Hall $25,000 in punitive damages. Wal–Mart then moved for a judgment notwithstanding

the verdict.[1] It argued that there was insufficient evidence to support the punitive damages award because the record did not contain evidence of Wal–Mart's wealth.[2] This motion was also denied. The judge stated in his oral ruling that he could take judicial notice of Wal–Mart's status as "the number one retailing organization in the country,"[3] and in the written order denying the motion he said that "there was sufficient evidence the jury could have relied on with regard to Wal–Mart'[s] relative wealth." This appeal ensued.

■ Turning to the standard of review, we reverse a trial court's denial of a motion for a j.n.o.v. based on insufficient evidence to support the verdict only if, "viewing the evidence in the light most favorable to the party who prevailed, we conclude that the evidence is insufficient to support the verdict." *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). In order to prevail, "the appealing party 'must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict.'" *Heslop v. Bank of Utah*, 839 P.2d 828, 839 (Utah 1992) (quoting *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991)); *see also Hansen*, 761 P.2d at 17–18. In this case there was no evidence for Wal–Mart to marshal because there was no evidence in the record as to Wal–Mart's relative wealth. The issue before us is simply a question of law: Is the introduction of some evidence as to the defendant's relative wealth a prerequisite to an award of punitive damages?

■ Wal–Mart relies on statements in several of our cases for its argument that there must be evidence of relative wealth. For example, in *Nelson v. Jacobsen*, 669 P.2d 1207 (Utah 1983), we held that a punitive damages award of $25,000 could not be sustained "because it was entered without adducing any evidence or making any findings of fact regarding defendant's net worth or income." *Id.* at 1219. We also struck down an award of punitive damages in *Bundy v. Century Equipment Co.*, 692 P.2d 754 (Utah 1984), stating that "in the absence of such evidence [as to defendant's net worth] the award [of punitive damages] cannot be sustained." Furthermore, in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991) ("*Crookston I*"), we reiterated that in assessing the amount of punitive damages which should be awarded the trier of fact must consider seven factors, one of which is the relative wealth of the defendant.[4] *See id.* at 808; *see also Bundy*, 692 P.2d at 759; *Cruz v. Montoya*, 660 P.2d 723, 727 (Utah 1983); *First Sec. Bank, N.A. v. J.B.J. Feedyards, Inc.*, 653 P.2d 591, 599 (Utah 1982).

While on their face these statements seem to support Wal–Mart's contention, the facts of the instant case are distinguishable in one important respect: all of the cases cited by Wal–Mart dealt with challenges to punitive damages awards based on the alleged excessiveness of those awards; here, Wal–Mart

---

1. "Ordinarily, the failure to make a motion for a directed verdict forecloses consideration of a later motion for judgment notwithstanding the verdict and any appellate review of the sufficiency of the evidence to support the verdict." *Hansen v. Stewart*, 761 P.2d 14, 15 n. 1 (Utah 1988). However, it is clear from the record either that the judge treated Wal–Mart's general objection as a motion for a directed verdict or that the motion had been properly made at some point which cannot be determined from the record before us. Furthermore, because Hall has not raised the issue, we proceed on the assumption that the motion was made. *See id.*

2. Wal–Mart also argued that there was insufficient evidence presented at trial to show that it had acted with a knowing, reckless indifference toward, and disregard of, the rights of others. The district court's ruling on this issue, however, is not before us.

3. As far as can be discerned from the record, the district court did not actually take judicial notice of this fact, and it was not submitted to the jury as a conclusively established fact as Rule 201(b) of the Utah Rules of Evidence would require.

4. The other six factors are:

    (i) the nature of the alleged conduct; (ii) the facts and circumstances surrounding such conduct; (iii) the effect thereof on the lives of the plaintiff and others; (iv) the probability of future recurrence of the misconduct; (v) the relationship of the parties; and (vi) the amount of actual damages awarded.

    *Crookston I*, 817 P.2d at 808. Note, however, that within the same decision we stated these factors "should" be considered. *Id.* at 810.

does not contend that the punitive damages award was excessive. Rather, it contends only that the introduction of evidence as to the relative wealth of the defendant is a technical prerequisite to an award of punitive damages. We decline to adopt such a position as a matter of law.

■ Although it is true that some of our cases seemingly place great importance on evidence of relative wealth, we have never held that an award of punitive damages is completely precluded in its absence. For example, in *Cruz*, a case in which there was no evidence of the defendant's salary, assets, or net worth, we concluded that the award of punitive damages was excessive and reduced it. *See* 660 P.2d at 727. We did not strike down the award entirely. Similarly, in *Bundy*, we remanded the case to the trial court for a redetermination of punitive damages after deeming the original award excessive. *See* 692 P.2d at 760. These cases illustrate that our primary concern has not been with rigid application of the seven factors, but with how evidence as to these factors helps us determine excessiveness. We do not mean to imply that evidence of relative wealth is not important or that it should not be considered. We state only that a directed verdict or j.n.o.v. should not be granted solely on the basis that the plaintiff has not introduced evidence of the defendant's relative wealth.

■ It is important to note that although we affirm the ruling of the district court in this case, evidence of relative wealth is still quite important where the excessiveness of a punitive damages award is at issue. As we stated in *Crookston I:*

> If the ratio of punitive to actual damages falls within the range that this court has consistently upheld, then the trial court may assume that the award is not excessive.... If the award exceeds the ratios set by our past pattern of decision, the trial court is not bound to reduce it. However, if such an award is upheld, the trial judge must make a detailed and reasoned articulation of the grounds for concluding

that the award is not excessive in light of the law and the facts. The judge's articulation should generally be couched in terms of one or more of the seven factors ... unless some other factor seems compelling to the trial court.

817 P.2d at 811. Thus, under *Crookston I*, an award of punitive damages which is well below $100,000 but which exceeds a 3 to 1 ratio of punitive to actual damages is presumptively excessive.[5] *See id.* However, the award can be justified by an explanation of "why the case is unique, usually in terms of one of the established seven factors." *Crookston v. Fire Ins. Exch.*, 860 P.2d 937, 939 (Utah 1993) (*"Crookston II "*). A factor which may serve to justify the award is the relative wealth of the defendant.

For example, it seems safe to assume that the majority of people believe the defendant in the instant case, Wal–Mart, is a wealthy corporation. If this were in fact true, it might be that if Wal–Mart were to act in a particularly egregious manner, a disproportionally larger award of punitive damages would be more justified than would otherwise be the case because of the need to ensure that the award has the proper punishment and deterrent effect. *See Nelson*, 669 P.2d at 1219 (stating an award of punitive damages "is primarily intended to punish the defendant and thereby deter others similarly situated from imitating his conduct.... Thus, the defendant's net worth and income are always relevant in determining the amount of punitive damages that would be appropriate for punishment.") However, in the absence of evidence as to Wal–Mart's relative wealth, a punitive damage award which would be presumed excessive under *Crookston I* could not be sustained solely on a generalized belief that Wal–Mart is wealthy and that that assumption justifies a disproportional punitive award. Rather, there would need to be concrete evidence in the record regarding Wal–Mart's relative wealth, or similarly compelling evidence as to one or more of the other factors. Thus, the plaintiff who fails to introduce evidence of the defen-

---

5. Note however, that we have indicated some inclination to overturn punitive awards with less than a 3 to 1 ratio of punitive to actual damages where that award exceeds $100,000. *See Crookston I*, 817 P.2d at 811.

dant's relative wealth risks having an award struck down on the basis of excessiveness. In this case, however, Hall's failure to introduce evidence of Wal–Mart's relative wealth is not fatal to the award of punitive damages because no claim of excessiveness has been made.

Justice Russon, in his dissent, expresses concern for the defendant who appears to have vast resources but in fact does not. The relevant question then, is "if the defendant is not as wealthy as the jury might in the absence of any evidence suppose, should the plaintiff be required to show this?" *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir.1996). As Judge Posner so ably explained in *Kemezy:*

> The reprehensibility of a person's conduct is not mitigated by his not being a rich person, and plaintiffs are never required to apologize for seeking damages that if awarded will precipitate the defendant into bankruptcy. A plea of poverty is a classic appeal to the mercy of the judge or jury, and why the plaintiff should be required to make the plea on behalf of his opponent eludes us.... The defendant who cannot pay a large award of punitive damages can

point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay.

*Id.* Thus, our view is in accord with the majority of courts who have addressed the issue.[6] While evidence of the defendant's wealth is a relevant factor in the award of punitive damages, it is not a necessary factor. The plaintiff is not required to introduce evidence of a defendant's relative wealth, but would be wise to do so, as under *Crookston I,* an award which is presumptively excessive and might otherwise be struck down, can be justified by the defendant's relative wealth. On the other hand, the defendant who appears to have wealth but in fact does not, should not expect the plaintiff to point this out to the jury for him. He himself must present to the jury evidence of his inability to pay a large award of punitive damages.[7]

To summarize, while evidence of relative wealth is important, and should be considered by a jury, failure on the part of the plaintiff to introduce such evidence is not automatically fatal to an award of punitive damages.

Affirmed.

**6.** *See Kemezy,* 79 F.3d at 34 (stating "the majority rule, which places no burden of production on the plaintiff, is sound, and ... it is indeed the law of this circuit"); *Hutchinson v. Stuckey,* 952 F.2d 1418, 1422 (D.C.Cir.1992) (stating "the weight of authority places on the defendant the burden of producing evidence of his own financial condition if he wishes it considered by the jury"); *Smith v. Lightning Bolt Prods.,* 861 F.2d 363, 373 (2d Cir.1988) (stating "it is the defendant's burden to show that his financial circumstances warrant a limitation of the award"); *Fishman v. Clancy,* 763 F.2d 485, 490 (1st Cir. 1985) (rejecting argument that punitive damages were excessive when "[d]efendants chose not to offer proof of their financial conditions"); *Woods–Drake v. Lundy,* 667 F.2d 1198, 1204 n. 9 (5th Cir.1982) (stating "it is defendant, and not plaintiff, who must carry the burden of introducing evidence of net worth if defendant wishes these facts to be considered in awarding punitive damages"); *Pluid v. B.K.,* 948 P.2d 981, 984 (Alaska 1997) (holding evidence of defendant's wealth not a prerequisite to award of punitive damages); *Rinaldi v. Aaron,* 314 So.2d 762, 765 (Fla.1975) (stating "evidence of financial worth is admissible and may be considered by the jury ... but evidence of worth is not a requisite to such award"); *Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 362 N.E.2d 845, 848

(1977) (stating "there appears to be no requirement that evidence of worth be submitted in cases of punitive damages"); *C & C Trucking v. Smith,* 612 So.2d 1092, 1104 (Miss.1992) (stating "failure of either party to take advantage of the opportunity to present such evidence would not vitiate the claim for exemplary damages"); *Hotel Riviera, Inc. v. Short,* 80 Nev. 505, 396 P.2d 855, 862 (1964) (stating "it is not essential to show defendant's wealth in seeking exemplary damages"); *Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 810 (N.D.1989) (stating "there is no requirement that evidence of defendant's wealth be introduced in order to support an award of exemplary damages"); *Hicks v. Lilly Enterprises, Inc.,* 45 Or.App. 211, 608 P.2d 186, 189 (1980) (stating "[w]hile the wealth of defendant is a relevant inquiry on the issue of punitive damages, it is not a necessary element").

**7.** The defendant, however, should not be permitted to plead poverty where he has an insurance policy which covers an award of punitive damages. *See Kemezy,* 79 F.3d at 37; *see also De-Loach v. Bevers,* 922 F.2d 618, 624 (10th Cir. 1990), *cert. denied* 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991); *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897, 910 (1991); *DeMatteo v. Simon,* 112 N.M. 112, 812 P.2d 361, 364 (N.M.Ct.App.1991).

DURHAM, Associate C.J., and WILKINSON, J., concur in Justice ZIMMERMAN's opinion.

RUSSON, Justice, dissenting:

I respectfully dissent. As this court has long held, evidence of the "relative wealth" of a defendant is a factor that should be considered in the determination of punitive damages whether the defendant be an individual or a business. *Crookston v. Fire Ins. Exch.,* 817 P.2d 789 (Utah 1991). This is so because punitive damages are awarded as a measure of punishment to the defendant in the most egregious cases of malicious misconduct, not as additional compensation to the plaintiff, and the amount that will punish depends upon relative wealth. In *Behrens v. Raleigh Hills Hospital, Inc.,* 675 P.2d 1179 (Utah 1983), we stated:

> Although punitive damages may be awarded in an appropriate case, the general rule is that only compensatory damages are appropriate and that punitive damages may be awarded only in exceptional cases.... Since punitive damages are not intended as additional compensation to a plaintiff, they must, if awarded, serve a societal interest of punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means.

*Id.* at 1186 (citations omitted). Since the purpose of punitive damages is to punish and deter, certain factors must, of necessity, be considered in order to achieve that result. In *Crookston,* we set forth seven factors that should be considered in assessing the amount of punitive damages:

> (i) the relative wealth of the defendant;
>
> (ii) the nature of the alleged misconduct;
>
> (iii) the facts and circumstances surrounding such conduct;
>
> (iv) the effect thereof on the lives of the plaintiff and others;
>
> (v) the probability of future recurrence of the misconduct;
>
> (vi) the relationship of the parties; and

> (vii) the amount of actual damages awarded.

817 P.2d at 808 (citations omitted).

The first factor listed, the relative wealth of the defendant, is necessary inasmuch as the amount of punitive damages cannot be determined without knowledge of the financial strength of the defendant. An award of punitive damages in the amount of $10,000 could totally destroy one defendant financially while hardly making a ripple against another defendant. Moreover, appearances may be deceiving. · One defendant may appear to have great wealth while actually being on the verge of bankruptcy, while another may actually have great wealth but appear to have little. This is true whether the defendant is an individual or a business.

To complicate this matter further, most, if not all, liability insurance policies do not protect a party against the very acts necessary to support an award of punitive damages— intentional and malicious wrongdoing. Since punitive damages have such personal impact, a jury must have evidence of a defendant's relative wealth in order to intelligently establish an amount of punitive damages that will be fair but sufficiently punish that defendant and deter future conduct. Without such evidence, it would be impossible to make such a determination.

In the case before us, the majority has simply eliminated the "relative wealth" of the defendant as a factor. While the majority states that evidence of relative wealth may still be important where the excessiveness of a punitive damages award is at issue, what they do not understand is that excessiveness will never be an issue until after the jury has determined the amount of punitive damages. And determining whether the award is excessive depends upon the relative wealth of the defendant.

While Wal–Mart may well appear to have vast resources and be more than able to pay the amount of punitive damages awarded in this case, we have no evidence of those facts. If we allow ourselves to make such rulings without evidence, who will be next? Where do we draw the line? I am concerned not only about Wal–Mart but also about the next defendant who will be subject to the new rule

set forth by the majority opinion. For these reasons, I would reverse the award of punitive damages.

HOWE, C.J., concurs in Justice RUSSON's dissenting opinion.

Having disqualified himself, STEWART, J., does not participate. The Honorable HOMER F. WILKINSON sat.