*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 30**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SHELLIE BIESELE and MELODIE JACOBSEN,
*Appellees and Cross-Appellants,*

*v.*

JODY MATTENA and MAY HARRIS,
*Appellants and Cross-Appellees.*

No. 20180226
Filed July 10, 2019

On Direct Appeal

Third District, Salt Lake County
The Honorable Patrick Corum
No. 140902798

Attorneys:

Matthew N. Evans, Matthew M. Cannon, Salt Lake City, for
appellees and cross-appellants

J. Angus Edwards, Bruce Wycoff, Salt Lake City, for appellant and
cross-appellee Jody Mattena

Jeffrey R. Oritt, Salt Lake City, for appellant and cross-appellee May
Harris

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE PEARCE, JUSTICE PETERSEN, and
JUDGE HAGEN joined.

Having recused himself, JUSTICE HIMONAS does not participate
herein. COURT OF APPEALS JUDGE DIANA HAGEN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Two sets of sisters—Shellie Biesele and Melodie Jacobsen,
and May Harris and Jody Mattena—were beneficiaries of an
inheritance from Royalene Thomas, respectively their stepmother
and mother. A family dispute concerning this inheritance escalated

into a trial, ultimately resulting in a jury verdict against Harris and Mattena. The jury found that they committed a variety of torts in relation to the inheritance and accordingly found them liable for a considerable sum of compensatory and punitive damages. Both sets of sisters now appeal various rulings made by the trial court during the course of that proceeding.

¶2    Harris and Mattena contend that the trial court committed a number of errors. First, they argue that the court erred by imposing joint and several liability on certain damages and fee awards in violation of the Liability Reform Act ("LRA"). Second, they assert that the court should have bifurcated the trial into a liability phase and a damages phase with respect to the punitive damages award. Finally, they aver that the court erred by declining to strike the punitive damages award as excessive. In their cross-appeal, Biesele and Jacobsen argue that the court erred in declining to award them expert witness fees.

¶3    We reject each of these arguments and affirm the trial court across the board. Two of our holdings merit a brief preview here. First, we conclude that the LRA's provision for apportionment of damages, Utah Code section 78B-5-818(4)(a), is mandatory only upon a request by a party. We hold, in other words, that in the absence of a request for apportionment, a trial court acts within its discretion in falling back on the default of joint and several liability. Second, we also interpret the terms of Utah Code section 78B-8-201(2), which provides that "[e]vidence of a party's wealth or financial condition shall be admissible only after a finding of liability for punitive damages has been made." We hold that this provision does not mandate bifurcation of a punitive damages trial in a case in which no party sought to introduce evidence of wealth or financial condition. And we conclude that our case law does not require the introduction of such evidence as a prerequisite to the availability of a punitive damages award.

I

¶4    Shellie Biesele and Melodie Jacobsen ("Stepdaughters") are sisters. They are also half-sisters to May Harris and Jody Mattena ("Daughters"). The two sets of sisters share the same father but have different mothers. Royalene Thomas is the biological mother of Daughters and the stepmother of Stepdaughters. Thomas suffered from Alzheimer's disease for a period of time and subsequently passed away. She left an estate which included a trust (the "Trust")

and an IRA (the "IRA"). The Trust and the IRA are the subjects of the instant lawsuit.

¶5   Stepdaughters brought suit against Daughters alleging that they had engaged in tortious conduct during the period of Thomas's illness and death. Stepdaughters claimed that Daughters improperly spent money from the Trust before Thomas's death, exercised undue influence over Thomas in order to convince her to disinherit Stepdaughters, and failed to disburse money from the IRA to which they (Stepdaughters) were entitled.

¶6   The dispute culminated in a five-day jury trial. At trial, Stepdaughters alleged that Daughters committed a variety of intentional torts. And they sought both compensatory and punitive damages to compensate them for these wrongs. Despite the presence of claims potentially giving rise to punitive damages, neither party sought to introduce evidence concerning the wealth or financial status of Daughters. The trial court thus saw no need to bifurcate the trial, and allowed evidence regarding both the Daughters' liability for punitive damages and the amount of those damages.

¶7   On the last day of the trial, the parties discussed the use of a special verdict form with the trial court. During that discussion, Daughters raised a concern that there should be "no joint and several liability" based on their reading of the LRA. Consistent with this concern, the special verdict form they proposed requested apportionment of fault for those claims relating to the Trust. The form did not, however, request apportionment for claims relating to the IRA. And the form the trial court eventually sent to the jury contained an apportionment instruction for the Trust but not the IRA.

¶8   The jury returned a verdict in favor of Stepdaughters on every issue. The jury awarded Stepdaughters $197,064.54 in compensatory damages for torts relating to the IRA. This award was joint and several. The jury also awarded Stepdaughters $76,471.76 from Mattena and $35,019.16 from Harris in connection with the Trust. Finally, the jury imposed punitive damages on each Daughter in the amount of $308,555.46.

¶9   After the trial, Stepdaughters filed a motion for attorney fees, costs, and expenses. Among the expenses they sought were the fees they paid to an expert witness they retained. Some time after that, Daughters filed a motion for judgment notwithstanding the verdict. In that motion Daughters contended that the trial court erred by refusing to bifurcate the trial into a liability phase and a damages

phase for the punitive damages claim. They also asserted that the jury's punitive damages awards could not be sustained because they were improperly based on contract claims rather than tort claims. The trial court subsequently issued a memorandum decision in which it granted in part and denied in part Stepdaughters' motion for attorney fees, costs, and expenses (allowing only attorney fees) and denied the Daughters' motion for judgment notwithstanding the verdict.

¶10 The trial court entered final judgment on January 5, 2018. Daughters filed a rule 59 motion to alter the judgment, or in the alternative, for a new trial on February 2, 2018. After the court denied the motion, Daughters and Stepdaughters both filed notices of appeal. Daughters raise three issues on appeal—as to (1) the propriety of the imposition of joint and several liability for claims relating to the IRA, (2) the trial court's failure to bifurcate the trial, and (3) the appropriateness of the punitive damages award. The Stepdaughters raise one additional issue—whether the court erred in declining to award them expert witness fees.

II

¶11 This case raises important questions under the Liability Reform Act, UTAH CODE §§ 78B-5-817 *et seq.*, and under Utah Code section 78B-8-201(2), which provides that "[e]vidence of a party's wealth or financial condition shall be admissible only after a finding of liability for punitive damages has been made." In addition to questions involving these statutes, the parties have raised issues concerning the trial court's refusal to strike the punitive damages award as excessive and refusal to award expert witness fees to the prevailing party below. On appeal, we must decide: (1) the proper course of action under the LRA when neither party requests apportionment of a damages award; (2) whether bifurcation of the trial is mandatory in all cases where punitive damages are sought; (3) whether the punitive damages award returned by the jury is excessive; and (4) whether the trial court erred in refusing to award expert witness fees. We affirm for reasons explained below.

A

¶12 The trial court imposed joint and several liability on Daughters in two instances—for the damages associated with the IRA and for the attorney fees awarded to Stepdaughters. We hold that neither of these awards was in error.

4

1

¶13 Daughters challenge the trial court's imposition of joint and several liability for damages based on their tortious conduct relating to the IRA funds. Their argument raises questions of the application and interpretation of the LRA, which we review for correctness. *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 10, 422 P.3d 815.

¶14 The LRA is the statutory scheme governing apportionment of fault in Utah. The operative provision of the LRA states that "[s]ubject to Section 78B-5-818, the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant." UTAH CODE § 78B-5-820(1). Utah Code section 78B-5-818 establishes a comparative negligence regime. And subsection 4(a) of 818 provides "[t]he fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each . . . defendant."[1] *Id.* § 78B-5-818(4)(a).

¶15 Daughters claim that our case law interpreting these provisions has established that joint and several liability is categorically abolished in Utah. And they contend that the jury verdict imposing such liability on the IRA claims must accordingly be set aside.

¶16 Stepdaughters respond by pointing to the language of section 818. Citing that provision, Stepdaughters assert that joint and several liability is abolished only if and when a party *requests* apportionment. And because Daughters never requested apportionment, Stepdaughters insist that joint and several liability is appropriate here.

¶17 This is an open question under our case law. We have, as Daughters note, made seemingly sweeping statements about the LRA's effect of "eliminat[ing] joint and several liability." *See Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 17, 416 P.3d 595 (stating that the LRA

---

[1] The full provision reads: "[t]he fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each person seeking recovery, to each defendant, to any person immune from suit, and to any other person identified under Subsection 78B-5-821(4) for whom there is a factual and legal basis to allocate fault."

"was expressly designed to eliminate joint and several liability"); *see also Egbert v. Nissan Motor Co.*, 2010 UT 8, ¶ 38, 228 P.3d 737 (asserting that the LRA "not only favors apportionment, it demands it"). But these broad-brush statements are not controlling. We have never before confronted the question of whether the LRA's apportionment principles are mandatory even absent a request by the parties. The LRA undoubtedly gave litigants a definitive method by which they could "eliminate joint and several liability" in the legal action at hand. But that leaves open the question whether parties are required to avail themselves of that right. We confront that question now. And we agree with the Stepdaughters.

¶18 The two cited provisions of the LRA may seem in tension at first glance. But the tension is easily resolved. The most natural reading of the statutory language is that the apportionment of fault requirement is mandatory only if requested by one of the parties. The operative statute mandates apportionment only "when requested by a party." UTAH CODE § 78B-5-818(4)(a). Otherwise, apportionment is merely permissive. This is clear from the plain language and structure of section 818, which provides that the fact finder "may" apportion liability "to each defendant" (and to other persons listed by statute) and states specifically that the fact finder "shall" do so only "when requested by a party." *Id.*

¶19 These terms of section 818 jibe best with the Stepdaughters' position. It is a "settled canon" of statutory interpretation that we seek to preserve the independent meaning of all statutory provisions. *See VCS, Inc. v. Utah Cmty. Bank*, 2012 UT 89, ¶ 18, 293 P.3d 290 (noting that "preserving independent meaning for all statutory provisions" is a "settled canon"). And it is difficult to interpret the statutory provisions as the Daughters do—as categorically abolishing joint and several liability—while also affording meaning to the "may" and "shall" provisions of section 818. Those provisions suggest that apportionment is mandated only upon a request by a party. In the absence of such a request the fact finder retains the discretion to revert to joint and several liability.

¶20 This conclusion is entirely compatible with the statutory directive that "the maximum amount for which a defendant may be liable to any person seeking recovery is that percentage or proportion of the damages equivalent to the percentage or proportion of fault attributed to that defendant." UTAH CODE § 78B-5-820(1). The quoted provision, after all, is expressly "[s]ubject to Section 78B-5-818." *Id.* And section 818, as noted, mandates

apportionment only when it is "requested by a party." *Id.* § 78B-5-818(4)(a).

¶21 This conclusion is also consistent with established principles of waiver or forfeiture. "[M]ost all rights in our legal system" are subject to waiver or forfeiture. *State ex rel. M.H.*, 2014 UT 26, ¶ 32, 347 P.3d 368. The statutory right to apportionment of fault is no exception. By statute, the failure to request apportionment effects a waiver of a right that is otherwise available under the LRA. If a party fails to request apportionment "[t]he fact finder *may* . . . allocate the percentage or proportion of fault attributable to each . . . defendant." UTAH CODE § 78B-5-818(4)(a) (emphasis added). But the fact finder is not required to do so.

¶22 This also makes practical sense. If neither party has requested apportionment, the court may not be in a good position to do so; the record may be lacking in evidence that could inform the apportionment exercise. It accordingly makes sense to reserve some discretion to the fact finder in such a case. And if the fact finder declines to exercise that discretion, joint and several liability may operate as a default fallback.[2]

¶23 The key question, then, is whether Daughters requested apportionment in the district court. Daughters insist that they did so. They point to seven filings they made in the trial court requesting apportionment. But all of the cited filings were lodged *after* the trial concluded. Post-trial motions cannot operate as requests for apportionment because it is the *fact finder* that must apportion fault. *See* UTAH CODE § 78B-5-818(4)(a) ("fact finder" may apportion fault). And here, the jury operated as the fact finder. Any request for apportionment should accordingly have been made at a time and in a manner that would have allowed the jury to deliberate on the evidence and allocate fault.

---

[2] This conclusion leaves unanswered a range of important questions—as to the alternatives to joint and several liability that the court may consider, whether the court may *sua sponte* ask whether the parties would prefer apportionment, and what factors the court should consider in exercising its discretion. We leave these questions unanswered here, however, reserving them for a future case in which these questions are squarely presented.

¶24 A proposed special verdict form could function as such a request.[3] And Daughters did provide the trial court with one. But notably, the form proposed by Daughters did not request apportionment of damages associated with the IRA. It only requested apportionment of damages awarded for torts relating to the Trust. The natural inference from this omission is that Daughters did *not* want apportionment of the IRA damages.

¶25 Because Daughters failed to request apportionment of the IRA damages at trial, they have waived their entitlement to such apportionment. And the district court did not err in falling back on a default rule of joint and several liability.

2

¶26 Daughters also contend that the trial court's attorney fees award should have been apportioned. This argument fails under the language of the LRA and under our precedents. The LRA does not require apportionment of attorney fees.

¶27 This conclusion is mandated by the structure and text of the statute. The LRA includes statutory provisions that deal specifically with "attorney fees." UTAH CODE §§ 78B-5-825 to -828. "Damages" are a distinct matter addressed elsewhere in the LRA. *See* UTAH CODE §§ 78B-5-819, 820. This structural feature of the LRA is significant. It suggests that attorney fees and damages are distinct and separate. And it indicates that the LRA provisions that speak to apportionment of "damages" (without speaking to attorney fees) do not extend to the imposition of "attorney fees."

¶28 Our precedents are consistent with this view. We have held that the LRA "does not require the court to award *costs* to a prevailing party in [a] proportion equivalent to the percentage or proportion of fault attributed to the defendant." *Rodriguez*, 2018 UT 25, ¶ 35. This is because the LRA governs damages, and "costs are distinct from damages. Costs arise out of litigation and are not

---

[3] In this situation at least. In other circumstances, such as when a party seeks to apportion fault to someone not presently before the court, the statute prescribes other methods. *See, e.g.*, UTAH CODE § 78B-5-821(4) (requiring a party to file "a description of the factual and legal basis on which fault can be allocated" before fault can be apportioned to a non-party).

dependent on fault. Damages . . . relate to a party's injury and depend on a party's fault for detriment or injury sustained." *Id.* ¶ 34.

¶29 This language admittedly speaks to "costs" rather than attorney fees. But the reasoning in *Rodriguez* is equally applicable to both. Like costs, attorney fees "arise out of litigation" rather than the underlying claim. *Id.* And both costs and attorney fees are distinct from damages in that they do not "depend on a party's fault for detriment or injury sustained." *Id.* Daughters' argument is thus also foreclosed by *Rodriguez*.

¶30 Other than this statutory argument, Daughters have made no attempt to show that the award of attorney fees was otherwise unjustified or in error. We accordingly affirm the trial court's fee award.

B

¶31 Next we must decide whether the trial court should have bifurcated the trial because Stepdaughters sought punitive damages. To some extent this raises a question of statutory interpretation—as to whether the governing statute requires bifurcation. On that question our review is for correctness. Because we conclude that the statute does not require bifurcation, however, there remains the question whether the trial court erred in declining to bifurcate the trial. On that question our review is under an abuse of discretion standard. *See Clayton v. Ford Motor Co.*, 2009 UT App 154, ¶ 9, 214 P.3d 865.

¶32 The threshold question concerns the meaning of Utah Code section 78B-8-201(2). That section provides that "[e]vidence of a party's wealth or financial condition shall be admissible only after a finding of liability for punitive damages has been made." Daughters urge us to read this statute to mandate a separate trial on the question of liability for punitive damages. But nothing in this statute sustains that broad requirement.

¶33 The statute does not bar the admission of all evidence related to punitive damages until after a finding of liability for punitive damages has been made. It just bars evidence of a "party's wealth or financial condition." The clear implication is that

bifurcation is necessary only if evidence of wealth and/or financial condition is going to be introduced.[4]

¶34 With this in mind, Daughters' proposed interpretation—that the punitive damages stage of a trial must always be bifurcated—can be correct only if such evidence is mandatory in all cases in which punitive damages are sought. But we have explicitly endorsed the contrary proposition. In *Hall v. Wal-Mart Stores Inc.*, we said that the "plaintiff is not required to introduce evidence of a defendant's relative wealth" in order to obtain punitive damages. 959 P.2d 109, 113 (Utah 1998). This statement is crystal clear. And it is fatal to Daughters' position. Wealth evidence is not a prerequisite to an award of punitive damages.[5] And bifurcation of the punitive

---

[4] This description suggests Utah Code section 78B-8-201(2) may effectively operate as either a rule of evidence (foreclosing admissibility of wealth evidence in certain circumstances) or a rule of procedure (mandating bifurcation of trial proceedings). If so, the statute may at least arguably raise questions under article VIII of the Utah Constitution—as to whether section 201(2) effects an amendment to a rule of evidence or procedure, and whether the legislature enacted it in accordance with the constitutional prerequisites to such an amendment. *See* UTAH CONST. art. VIII, § 4 (providing that our rules of procedure and evidence may be amended only "upon a vote of two-thirds of all members of both houses of the Legislature"); *Brown v. Cox*, 2017 UT 3, ¶ 18, 387 P.3d 1040 (legislature may amend rules of evidence or procedure only by joint resolution passed by a two-thirds vote of each house). We do not reach these questions here, however, as neither party has asked us to consider them.

[5] We acknowledge that there is some tension in our case law on this point. Two of our prior cases suggest that evidence of wealth or financial condition may be necessary to the imposition of a punitive damages award. *See Bundy v. Century Equip. Co.*, 692 P.2d 754, 759 (Utah 1984); *Nelson v. Jacobsen*, 669 P.2d 1207, 1219 (Utah 1983). But *Hall* is more recent than the cited cases, and explicitly distinguishes them. *See Hall v. Wal-Mart Stores Inc.*, 959 P.2d 109, 112 (Utah 1998). The *Hall* standard is clear and straightforward and has not been called into question by the parties. For these reasons we express no opinion on the merits of that decision.

(continued . . .)

damages stage is accordingly not required by statute in a case in which the claimant has not sought to introduce evidence of wealth or financial condition.

¶35 That leaves the question whether the trial court exceeded its discretion in declining to bifurcate the trial in this case. Neither party indicated an intent to introduce evidence of wealth or financial condition before trial or at any time during trial. Daughters have not pointed to any place in the record where they indicated that they planned to introduce wealth evidence. This is fatal to their argument on appeal. If either party had sought to introduce this type of evidence, the trial court would have been required to bifurcate the trial. But the trial court was not required to read Daughters' collective mind and intuit an unmanifested desire to introduce such evidence.[6] Until and unless the trial court is made aware that the parties wish to introduce wealth evidence, there is nothing to bifurcate. We accordingly affirm the trial court's decision not to bifurcate the trial.

C

¶36 Having concluded that the award of punitive damages was appropriate, even absent a bifurcated proceeding, we now turn to the amount of those damages. Specifically, we must determine whether the damages awarded in this case were excessive under the framework we articulated in *Crookston v. Fire Insurance Exchange*, 817 P.2d 789 (Utah 1991). We conclude they are not.

¶37 *Crookston* establishes two different ratios for evaluating whether a punitive damages award is "presumptively excessive"

---

The current state of our law can thus be summarized as follows: (1) wealth evidence is not necessary to an award of punitive damages, but (2) consideration of such evidence may be necessary to facilitate the evaluation of the "excessiveness" of such damages under *Crookston v. Fire Ins. Exch.*, 817 P.2d 789 (Utah 1991). This indicates that wealth evidence is not strictly required but may be advisable. A plaintiff who does not put on evidence of a defendant's wealth assumes the risk that a punitive damages award may be struck down as excessive.

[6] *See Hall*, 959 P.2d at 113 (The defendant "must present to the jury evidence of his inability to pay a large award of punitive damages.").

under rule 59(a)(5) of the Utah Rules of Civil Procedure. If the amount of punitive damages is less than $100,000, the award is excessive if it exceeds actual damages by a ratio of greater than 3:1. *Id.* at 810. If the amount of punitive damages is greater than $100,000, "the acceptable ratio appears lower." *Id.*[7] If a damage award exceeds the relevant ratio, it is "presumptively excessive" and the court must then consider numerous factors in deciding whether to uphold the award anyway. *Id.* at 811.

¶38 The damages figures in this case fall well within the bounds of the ratios above. With respect to Mattena, the punitive damages were $308,555.46 and the compensatory damages were $273,536.30 ($76,471.76 relating to the trust plus $197,064.54 relating to the IRA). With respect to Harris, the punitive damages were $308,555.46 and the compensatory damages were $232,083.70 ($35,019.16 relating to the trust plus $197,064.54 relating to the IRA). The ratios are accordingly 1.128 and 1.330 respectively.[8] Both ratios are well under 2:1 and thus certainly satisfy the *Crookston* requirement that the ratio be "lower" than 3:1.

¶39 Daughters recognize this inconvenient fact. They try to get around it by arguing that the compensatory damages relating to the IRA are actually *contract* damages and therefore cannot be the basis of punitive damages. They claim that their refusal to disburse funds to Stepdaughters from the IRA stemmed from a misinterpretation of the terms of the contract with Morgan Stanley. These damages, in their view, should therefore not be counted in assessing the excessiveness of the punitive damages. And the remaining tort

---

[7] We have never defined what, exactly, we mean by "lower." It is doubtful that any precise line can be drawn, given the inherent arbitrariness of the ratios. Suffice it to say that the ratios in this case, as discussed below, are low enough.

[8] These damages figures do not "double count." Although it is true that the full amount of IRA damages was assessed against both Mattena and Harris, that is simply a central feature of joint and several liability. They are both liable for the full amount of those damages. Of course, Stepdaughters will not be entitled to claim the full amount from both defendants. But that does not change the fact that they are entitled to collect the full amount from *either* defendant. It is thus appropriate to include the full amount of the damages in calculating the *Crookston* ratios.

damages, Daughters assert, are insufficient to sustain the punitive damages award under the *Crookston* ratios.

¶40 It is true that under Utah law punitive damages are not available for breach of contract claims (unless the breach amounts to an independent tort). *See, e.g., Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 51, 424 P.3d 897. But Daughters' argument fails because the IRA damages are tort damages and not contract damages.

¶41 The special verdict form the jury returned found Daughters liable for a variety of intentional torts relating to the IRA. While the first question on the form did ask the jury to interpret the terms of the IRA contract, the remainder of the form explicitly found Daughters liable for a laundry list of intentional torts, including conversion, breach of fiduciary duty, and intentional interference with Stepdaughters' inheritance. The verdict is thus crystal clear that Daughters' liability sounds in tort, not contract.

¶42 It would make little sense to find that the IRA damages arise from contract law. There *is* no contract between Daughters and Stepdaughters. The only contract at issue is between Morgan Stanley and Thomas's estate. It would be absurd to allow Daughters to elude tort liability by recasting this as a contract claim when the party bringing the suit has no contractual relationship with the defendant.[9] If we were to go down this road, it would allow all manner of pure tort claims to be transmuted into contract claims so long as the defendant could point to some contract she claimed to be interpreting. This would not be a sensible regime. As long as the jury has returned a verdict finding the defendant liable for tort claims that legitimately give rise to punitive damages, that is the end of the inquiry.[10]

---

[9] We need not decide whether Stepdaughters could have brought a contract suit on a third-party beneficiary theory. It is enough to note that they asserted only tort claims, and that the jury found in their favor on those claims.

[10] This does not mean, of course, that parties are free to seek punitive damages for claims that sound truly in contract. If there is a contract between the parties to a suit, and the suit arises out of that contract, it is unlikely that tort damages will be available. Doctrines such as the economic loss rule will generally operate to prevent parties from converting contract claims into tort claims in those

(continued . . .)

¶43 Any challenges to the jury verdict should thus be made under a sufficiency of the evidence framework. Daughters have made no such challenge here. Having decided that the IRA damages are properly categorized as tort damages, we conclude punitive damages were proper. And as discussed above, we hold that the ratio of punitive damages to compensatory damages is well below the ratio permitted by *Crookston*. We affirm the award of punitive damages on that basis.

D

¶44 Lastly, Stepdaughters appeal the trial court's decision not to award them expert witness fees. After the trial, Stepdaughters made a motion for attorney fees and costs pursuant to Utah Code section 75-7-1004(1). Among other expenses, they sought reimbursement for the fees paid to the expert witness they retained. The court declined to award them these fees. We review this decision for an abuse of discretion. *See Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 59, 345 P.3d 531. And under that standard of review, we see no basis to upset the trial court's ruling.

¶45 Stepdaughters attempt to cast the trial court's decision as one that must be reviewed for correctness. They contend that this is a matter of statutory interpretation, and that the trial court definitively ruled that the governing statute, Utah Code section 75-7-1004(1), does not allow expert witness fees to be awarded.

¶46 What the trial court actually said was that Stepdaughters "devoted no effort in their briefing to elucidating which costs and expenses, other than attorney's fees, are recoverable under section 1004(1)." And in the absence of such briefing, the court awarded only attorney fees. This is not an order based on statutory interpretation. It is an order based on Stepdaughters' failure to carry their burden of adequate briefing. It is not an abuse of discretion for

---

instances. *See, e.g.*, *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193 (explaining that the economic loss rule will often operate to bar tort claims based on an underlying breach of contract).

the trial court to decline to act as the research assistant for litigants.[11] We accordingly affirm.

### III

¶47 There was no error in imposing joint and several liability on Daughters for the IRA damages, in declining to bifurcate the trial, in the award of punitive damages, or in the exercise of the trial court's discretion to disallow expert witness fees. We accordingly affirm the trial court on all grounds.

––––––––––––

---

[11] To the extent that Stepdaughters now attempt to brief the issues they failed to brief before the trial court, their arguments are not preserved. We therefore decline to consider them.