Jennifer J. JONES, Plaintiff,

v.

RENT–A–CENTER, INC., Defendant.

No. CIV.A. 01–2320–CM.

United States District Court,
D. Kansas.

Aug. 20, 2003.

Amy L. Coopman, Parkinson, Foth, Orrick & Brown, LLP, Lenexa, KS, Mark A. Buchanan, Sanders, Simpson, Fletcher & Smith, L.C., Kansas City, MO, for Plaintiff.

Dan C. Dargene, Michael Coles, Winstead, Sechrest & Minick, P.C., Dallas, TX, Sara E. Welch, Stinson Morrison Hecker LLP, Kansas City, MO, Tammy L. Horn, Brous Horn LLC, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court are plaintiff's Motion for Attorney Fees and Related Non–Taxable Expenses (Doc. 103), defendant's Motion to Amend Judgment (Doc. 104), and defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur (Doc. 105). Also before the court is the Stipulation as to Statutory Attorney's Fees (Doc. 113). As set forth below, plaintiff's Motion for Attorney Fees and Related Non–Taxable Expenses is granted. Defendant's Motion to Amend Judgment is granted. Defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur is denied.

### I. Motion for Attorney Fees and Related Non–Taxable Expenses (Doc. 103)

In the Stipulation, the parties inform the court that they have agreed that the amount of statutory attorney's fees and non-taxable costs for the period through May 2, 2003, shall be $53,430.95. The court approves the parties stipulation, and awards attorney's fees and non-taxable costs to plaintiff in the amount of $53,430.95, pursuant to 42 U.S.C. § 2000e–5(g).

### II. Motion to Amend Judgment (Doc. 104)

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This case came before the court for a trial by jury. On March 7, 2003, the jury rendered a verdict that plaintiff should recover $10,000 in compensatory damages and $1.2 million dollars in punitive damages. On March 17, 2003, the court applied the statutory cap set forth in 42 U.S.C. § 1981a(b)(3)(D), and entered judgment in favor of plaintiff, reflecting an award of $10,000 in compensatory and $300,000 in punitive damages.

In the instant motion, defendant argues that the court's entry of judgment exceeded the statutory cap, because the $300,000 cap set forth in § 1981a(b)(3)(D) applies to the sum of all compensatory and punitive damages. Defendant accordingly requests the court to amend the judgment such that plaintiff is awarded $10,000 in compensatory and $290,000 in punitive damages.

Plaintiff does not oppose defendant's motion.

■ Upon consulting *Baty v. Willamette Industries, Inc.*, 985 F.Supp. 987, 998 (D.Kan.1997) and *Nelson v. Rehabilitation Enterprises of North Eastern Wyoming*, 124 F.3d 217, 1997 WL 476111, at *4 (10th Cir.1997), the court finds that defendant's argument reflects the prevailing view of the Tenth Circuit that § 1981a(b)(3)'s cap applies "for each complaining party," rather than to each claim. Accordingly, defendant's motion is granted. The judgment entered in this case on March 17, 2003, is hereby amended. Plaintiff is awarded $10,000 in compensatory damages and $290,000 in punitive damages.

### III. Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur (Doc. 105)

Defendant renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In the alternative, defendant requests a new trial or a remittitur of plaintiff's punitive damages award, pursuant to Federal Rule of Civil Procedure 59. In support of its motion, defendant contends that (1) plaintiff failed to present legally sufficient evidence that an appropriate management employee knew or should have known of the alleged sexual harassment and failed to take appropriate corrective action; (2) plaintiff failed to offer evidence of defendant's net worth and financial condition, thus leaving the jury with a legally insufficient basis upon which to award punitive damages; (3) the court erred by excluding evidence regarding personal conversations between plaintiff and her supervisor; (4) the court erred in instructing the jury regarding the circumstances upon which a defendant may be held liable for sexual harassment carried out by a supervisor; (5) the punitive damages award is against the weight of the evidence, because plaintiff failed to offer evidence of defendant's size or net worth; and (6) the punitive damages award is excessive and should be reduced.

### A. Legal Standard

■ Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988). The jury's verdict must be affirmed if, "viewing the record in the light most favorable to [the nonmoving party], there is evidence upon which the jury could properly return a verdict for [the nonmoving party]." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.1996). A court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Id.* On the other hand, judgment as a matter of law must be granted if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Id.* at 1546–47 (citing Fed.R.Civ.P. 50(a)). A legally sufficient basis requires more than "a scintilla of evidence" favoring the nonmoving party. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

■ Motions for a new trial pursuant to Rule 59 are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir.1993). In reviewing a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party. *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993). Moreover, the court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough*, 464 U.S. at 553,

104 S.Ct. 845. Error in the admission or exclusion of evidence, and no error in ruling or order of the court or anything done or omitted by the court can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties. *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir.1978); Fed. R.Civ.P. 61. "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983).

### B. Discussion

### 1. Alleged Failure of Plaintiff to Present Legally Sufficient Evidence of Knowledge of an Appropriate Management Employee Regarding Harassment

Defendant contends plaintiff failed to present legally sufficient evidence that an appropriate management employee, as defined in Instruction no. 18a, knew or should have known of the sexual harassment and failed to take appropriate corrective action.

In this case, plaintiff alleged she had been sexually harassed by John Grimsley, her supervisor, and by Mike Mirth, a coworker. Instruction no. 17, in relevant part, informed the jury that, "[i]n order for defendant to be liable to plaintiff for the conduct of John Grimsley, plaintiff must prove by a preponderance ... (1) That defendant's management knew or should have known of the sexual harassment directed toward plaintiff by John Grimsley; and defendant's management failed to take prompt and appropriate corrective action that was reasonably calculated to stop the harassment ...." In Instruction no. 18, the court instructed the jury that "[i]n order for defendant to be liable to plaintiff for the conduct of Mike

Mirth, plaintiff must prove by a preponderance of the evidence ... That defendant's management knew or should have known of the sexual harassment directed toward plaintiff by Mike Mirth; and defendant's management failed to take prompt and appropriate corrective action that was reasonably calculated to stop the harassment." The court further instructed the jury in Instruction no. 18a that, "In determining whether defendant's management knew or should have known of the sexual harassment as stated in Instruction numbers 17 and 18, defendant's management includes only those individuals designated by defendant as a final representative of the company for purposes of implementing the sexual harassment policy."

Defendant contends plaintiff presented no evidence at trial regarding whether any of the management employees who were aware of plaintiff's complaints, including Todd Shreeves and John Lacy, had been designated by defendant as a "final representative" for purposes of implementing the company's anti-harassment policies. Further, defendant argues that, even if Mr. Lacy had been designated a "final representative," a reasonable jury could not have concluded that Mr. Lacy "failed to take prompt and appropriate corrective action reasonably calculated to stop the harassment." In particular, defendant points to plaintiff's testimony that Mr. Grimsley's sexual harassment stopped after she reported it to Mr. Lacy.

Plaintiff argues that defendant may not raise this argument, because defendant failed to present it at trial when defendant moved for judgment as a matter of law. The court finds that this failure is excusable because defendant requested, and the court approved, the addition of the "final representative" language at the charge conference. The importance of such language was likely not apparent to defendant

at the time it moved for judgment as a matter of law.

Having reviewed the parties' arguments and the testimony presented at trial, the court finds that there was sufficient evidence presented to support the jury's finding of liability. At trial, the regional manager, Greg Green, and Market Manager, John Lacy, admitted that, under defendant's sexual harassment policy, an employee who becomes aware of sexual harassment has a duty to forward that complaint to his or her superior. Accordingly, the inference that Mr. Shreeves and Mr. Lacy were "final representatives" for purposes of defendant's sexual harassment policy was permissible.

Furthermore, even in light of plaintiff's testimony that the harassment stopped after she complained to Mr. Lacy, the jury's finding that defendant failed to take appropriate corrective action was supported by the evidence. Given the evidence presented at trial, the court finds the jury could have reasonably inferred that Mr. Shreeves or Mr. Lacy failed to take appropriate corrective action after learning of plaintiff's complaints.

## 2. Failure of Plaintiff to offer Evidence of Defendant's Net Worth and Financial Condition

Next, defendant argues that the court should set aside the jury's verdict on the grounds that plaintiff failed to present legally sufficient evidence to support an award of punitive damages. In particular, defendant argues plaintiff failed to offer evidence of defendant's financial condition. Instruction no. 21 provided, in relevant part:

> Punitive damages are not intended to compensate a plaintiff for injuries, but rather are intended to punish a defendant for extraordinary misconduct and to serve as an example or warning to a defendant and others not to engage in

such conduct. Thus, if you award these damages, you should consider defendant's net worth and the impact paying a punitive damages award would have on defendant.... Punitive damages must bear a reasonable relationship to plaintiff's actual injury.... In determining a reasonable relationship to the actual injury, you must consider all the relevant factors, including: (5) the effect of the damage award on defendant's financial condition.

In response, plaintiff argues that a jury may reasonably assess punitive damages without specific evidence of a defendant's net worth, and that it is defendant's burden to introduce evidence of net worth for the purposes of minimizing a punitive damages award.

In support of their argument, defendants cite the Third Circuit's decision in *Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.*, in which the court determined that plaintiff had met the requirements of a New Jersey state statute which required a plaintiff to present evidence of financial condition as a prerequisite to a punitive damages award. 181 F.3d 446, 464–65 (3d Cir.1999). The court finds *Inter Medical Supplies* distinguishable from the case at bar, because the language of the state statute at issue in that case specifically required the plaintiff to present evidence of defendant's financial condition.

■ The court gives more persuasive weight to the Tenth Circuit's holding in *Mason v. Oklahoma Turnpike Authority*, in which the court rejected the argument that a plaintiff must carry the burden to present evidence of a defendant's financial condition in order to establish the propriety and amount of punitive damages. 182 F.3d 1212, 1214 (10th Cir.1999) (following *Kemezy v. Peters*, 79 F.3d 33, 33–34 (7th Cir.1996)). In *Kemezy*, the Seventh Circuit analogized punitive damages awards to fines in general, noting that the usual

approach adopted by courts in awarding fines "is not to proportion the fine to the defendant's wealth, but to allow him to argue that the fine should be waived or lowered because he cannot possibly pay it.... It ill becomes *defendants* to argue that *plaintiffs* must introduce evidence of the defendant's wealth." *Id.* at 36. Thus, even if the language of the court's instruction is read as requiring the jury to consider the wealth of the defendant in awarding punitive damages, under the interpretation adopted by the Tenth Circuit, it was defendant's burden to present evidence to minimize any potential punitive damages. It was not plaintiff's burden to affirmatively establish the net worth of defendant.

■ Moreover, as plaintiff points out, some evidence of the size of defendant was presented at trial when Mr. Grimsley testified that 2,500 managers had attended a Title VII training session. This court found in *Rahn v. Junction City Foundry, Inc.*, that although no specific evidence of the wealth and size had been presented at trial, "the jury could infer from the evidence that defendant has a sizable work force and is a well established business in its market sector." 161 F.Supp.2d 1219, 1245 (D.Kan.2001). The court finds that sufficient evidence was presented to the jury to permit it to evaluate the size and net worth of defendant and the potential impact of a punitive damages award.

Defendant also argues that the jury verdict should be set aside on the grounds that, in reviewing a jury verdict, the trial court may not, consistent with the Seventh Amendment,[1] consider evidence which was not presented to the jury. The court clarifies that, in denying the pending motion for judgment as a matter of law, the court has not considered evidence outside that which was presented to the jury. Rather, the court has found that sufficient evidence was presented at trial to sustain the jury's verdict, and that it was defendant's burden to produce evidence to mitigate a potential punitive damages award.[2]

### 3. Exclusion of Evidence Regarding Personal Conversations Between Plaintiff and her Supervisor

Defendant moves for a new trial on the grounds that the court erred by excluding in limine all evidence of all conversations between plaintiff and her supervisor, Mr. Grimsley, regarding plaintiff's abortion. Defendant argues that, given plaintiff's testimony that she was offended by Mr. Grimsley's discussions of his personal life, defendant should have been permitted to question plaintiff as to whether she had discussed such a personal matter with Mr. Grimsley. Defendant further argues that the fact that plaintiff shared this information with Mr. Grimsley would have weak-

1. The Seventh Amendment provides that "[i]n suits at common law ... the right of trial by jury shall be preserved, and no fact tried to a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

2. Moreover, even if the court had considered evidence beyond the scope of what had been tried to the jury regarding punitive damages, the Seventh Amendment would not have been implicated. As the Supreme Court observed in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 437, 121 S.Ct.

1678, 149 L.Ed.2d 674 (2001), "[u]nlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a 'fact' 'tried' by the jury." (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 459, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (Scalia, J., dissenting)). The Court in *Cooper Industries* therefore held that, "[b]ecause the jury's award of punitive damages does not constitute a finding of 'fact,' appellate review of the district court's determination that an award is consistent with due process does not implicate the Seventh Amendment concerns raised by respondent and its amicus." *Id.*

ened the credibility of plaintiff's claim that she felt uncomfortable around Mr. Grimsley and was offended by his allegedly harassing behavior. Defendant also points out that the alleged harassment happened during the same time period at which plaintiff discussed her abortion with Mr. Grimsley.

At the limine conference, the court excluded evidence of discussions regarding plaintiff's abortion pursuant to Federal Rule of Evidence 403, on the grounds that its probative value was outweighed by the risk of undue prejudice. The Advisory Committee's notes to Rule 403 explain that "unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." Fed.R.Evid. 403 cmte. notes. The Advisory Committee also states that a trial court should consider "[t]he availability of other means of proof" as an appropriate factor in reaching a conclusion whether to exclude evidence based on unfair prejudice. *Id.*

In *Nichols v. American National Insurance Co.*, the Eighth Circuit found that the district court abused its discretion under Rule 403 by admitting evidence of a plaintiff's abortion. 154 F.3d 875, 885 (8th Cir. 1998). In *Nichols,* the defendant argued that such evidence was relevant as to damage issues and probative as an alternative cause of emotional distress plaintiff claimed to have experienced. *Id.* The Eighth Circuit determined the district court should have excluded the evidence under Rule 403, stating that "[i]nforming the jury that Nichols had had an abortion presented the danger of provoking 'the fierce emotional reaction that is engen-

dered in many people when the subject of abortion surfaces in any manner.' The evidence exposed a very private area of Nichols' life and a type of experience which frequently involves a conflict in conscience. Such evidence tends to be highly prejudicial." (citation omitted). *Id.*

 In its ruling, this court was guided by the same concerns expressed by the Eighth Circuit—chiefly, that knowledge of plaintiff's abortion could have caused the jury to decide the case on an improper basis by making a value judgment regarding plaintiff. Furthermore, other facts were introduced into evidence providing alternative means of proving that plaintiff was comfortable discussing personal topics with Mr. Grimsley and that she was not as offended by Mr. Grimsley's conduct as she had claimed to be. For example, defendant was permitted to introduce testimony that plaintiff had once lifted up her skirt in public at work to "flash" onlookers. The court finds that its ruling regarding evidence of plaintiff's abortion was not erroneous and does not warrant a new trial.

### 4. Instructions Given to Jury on Law Regarding Supervisor Harassment

Defendant argues that Instruction no. 17 did not accurately set forth the law regarding harassment by a supervisor, as set forth in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Instruction no. 17 stated, in full:

If you find that plaintiff was subjected to sexual harassment by John Grimsley as set forth in Instruction no. 13,[3] then

(1) Plaintiff was subjected to sexual innuendo, sexual touching, sexual comments and/or sexual propositions at her employment with defendant; and
(2) Such conduct was unwelcome; and

---

**3.** Instruction no. 13 provided, in relevant part:

In order to prevail on her sexual harassment claim, plaintiff must prove each of the following elements by a preponderance of the evidence:

you must determine whether defendant is liable to plaintiff. In order for defendant to be liable to plaintiff for the conduct of John Grimsley, plaintiff must prove by a preponderance of the evidence either:

(1) That defendant's management knew or should have known of the sexual harassment directed toward plaintiff by John Grimsley; and defendant's management failed to take prompt and appropriate corrective action that was reasonably calculated to stop the harassment;

OR

(2) That John Grimsley had immediate supervisory authority over plaintiff and created a hostile work environment for plaintiff. Even if plaintiff proves this element by a preponderance of the evidence, however, defendant is not liable to plaintiff for Mr. Grimsley's alleged harassment under this subsection if you find that defendant has proven by a preponderance of the evidence (a) that defendant exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant or unreasonably failed to take steps to otherwise avoid harm.

In determining whether management-level employees of defendant knew or should have known of the alleged sexual harassment, you may consider whether there were reasonable avenues available to plaintiff to file a complaint of sexual harassment and whether plaintiff timely complained of the alleged sexual harassment. You may also consider whether the existing complaint practices and procedures of defendant were effective, including the need, presence, and adequacy of any anti-harassment policy or complaint procedure at defendant's facilities.

In determining whether the remedial action taken by defendant's management-level employees was appropriate, you may consider whether the action was timely, whether it was proportional to the seriousness and frequency of the alleged harassment, and whether it was reasonably likely to prevent the misconduct from recurring.

In determining whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant, you may consider whether plaintiff used or unreasonably failed to use the defendant's complaint procedure.

Defendant argues that this instruction permitted the jury to find defendant strictly liable for the alleged harassment by Mr. Grimsley, without consideration of the *Faragher–Ellerth* affirmative defense. According to defendant, the instruction permitted the jury to infer that, because Mr. Grimsley was plaintiff's supervisor and had knowledge of his own conduct, and failed to "take prompt and appropriate corrective action that was reasonably calculated to stop the harassment," that the instruction permitted a finding of liability not contemplated by the Supreme Court in *Faragher* and *Ellerth*.

(3) Such conduct was based on plaintiff's sex; and

(4) Such conduct was sufficiently severe and pervasive to alter the conditions of plaintiff's employment and create an abusive or hostile working environment; and

(5) At the time such conduct occurred and as a result of such conduct, plaintiff found the work environment to be hostile or abusive.

In *Ellerth,* the Court discussed both negligence and vicarious liability of employers with regard to supervisor harassment. In particular, the Court examined § 219(2) of the Restatement (Second) of Agency, noting that:

> Under subsection (b), an employer is liable when the tort is attributable to the employer's own negligence.... Thus, although a supervisor's sexual harassment is out Under subsection (b), an employer is liable when the tort is attributable to the employer's own negligence. **Thus, although a supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it.** Negligence sets a minimum standard for employer liability under Title VII; but Ellerth seeks to invoke the more stringent standard of vicarious liability.

*Id.* at 758, 118 S.Ct. 2257 (emphasis added). Further, the court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." *Id.* at 765, 118 S.Ct. 2257. The defense is comprised of "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Given the *Ellerth* Court's analysis of § 216(b), it is clear the Court contemplated that an employer may be held liable for supervisor harassment under a negligence as well as a vicarious liability theory. The knowledge of a supervisor of his own harassment does not create a strict liability scenario, as argued by defendant. As established in *Ellerth,* the affirmative defense for vicarious liability does not apply when an employer's negligence is claimed to be the cause of a supervisor's harassment. Rather, to be held liable under a negligence theory, the defendant must have known or should have known of the conduct, and must have failed to take prompt and appropriate action to stop it. Instruction no. 17 set forth both theories of liability separately in paragraphs (1) and (2), and presented the *Faragher–Ellerth* defense only in paragraph (2), which pertained to vicarious liability. In light of *Ellerth,* Instruction no. 17 was an accurate statement of the law. The court finds that it did not err in giving this instruction.

5. **Punitive Damages Award is Against the Weight of the Evidence, Because Plaintiff Failed to Offer Evidence of Defendant's Size or Net Worth**

Defendant argues the court erred in applying the statutory cap set forth in 42 U.S.C. § 1981a(b)(3)(D) when the court reduced the jury's original punitive damages award, and awarded $300,000 in punitive damages (now reduced to $290,000). Defendant argues the court received no evidence regarding the number of employees of defendant and, therefore, lacked a sufficient basis for application of § 1981a(b)(3)(D). Section 1981a(b)(3)(D) caps the amount of compensatory and punitive damages awarded at $300,000 in the case of a respondent with 500 employees in each of 20 or more calendar weeks in the current or preceding year, and sets forth

lesser caps for parties with fewer employees at § 1981a(b)(3)(A)(C).

As discussed above, the Tenth Circuit has held that it is defendant's burden to offer evidence of net worth for the purpose of minimizing an award of punitive damages. Moreover, evidence was presented indicating that 2,500 managers had attended a Title VII training session—an amount well over the statutory cap. Even if, as defendant points out, the court did not hear evidence specifically stating that defendant had 500 or more employees in each of the 20 or more calendar weeks preceding the entry of judgment, it was defendant's burden to introduce such evidence, and the court's application of § 1981a(b)(3)(D) was appropriate in this case.

## 6. Excessiveness of Punitive Damages Award

Defendant argues that the jury's punitive damages award should be further reduced, even after application of the damages cap. In particular, defendant contends that the award should be reduced considering the factors set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Defendant argues that the 29:1 ratio of $10,000 in compensatory and $290,000 in punitive damages is the "most striking" reason for a reduction in punitive damages.

In *Gore*, the Supreme Court recognized that "elementary notions of fairness enshrined in our constitutional jurisprudence" require that an individual must receive fair notice that certain conduct may be punishable, as well as notice of the possible severity of a punishment. *Id.* at 574, 116 S.Ct. 1589. In light of this principle, courts reviewing the constitutionality of punitive damages awards must consider (1) the degree of reprehensibility of defendant's conduct; · (2) the ratio of punitive damages compared to the actual harm inflicted on the plaintiff; and (3) a comparison of the punitive damages award with the civil or criminal penalties that could be imposed for comparable misconduct. *Gore*, 517 U.S. at 575, 116 S.Ct. 1589. Defendant contends that application of the first and second *Gore* guideposts requires a remittitur of the punitive damages award.

During the parties' briefing on the pending motion, the Supreme Court decided *State Farm Mutual Automobile Insurance Co. v. Campbell*, —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). In *Campbell*, the Court held that an award of $145 million in punitive damages, where full compensatory damages were $1 million, was excessive in violation of the Due Process Clause of the Fourteenth Amendment. In the underlying action, the plaintiffs alleged the defendant had engaged in bad faith, fraud, and intentional infliction of emotional distress arising from defendant's refusal to settle their insurance claim stemming from a fatal automobile accident. *Id.*, 123 S.Ct. at 1517. At trial, the plaintiffs sought to prove that the defendant's conduct was part of a "national scheme to meet corporate fiscal goals by capping payouts on claims company wide," and the trial court allowed "extensive expert testimony regarding fraudulent practices by State Farm in its nation-wide operations." *Id.*, 123 S.Ct. at 1518–19 (citation omitted). The jury awarded $2.6 million in compensatory damages and $145 million in punitive damages, which the trial court reduced to $1 million and $25 million, respectively. *Id.*, 123 S.Ct. at 1519. On appeal, the Utah Supreme Court reinstated the $145 million punitive damages award. *Id.*

### a. Reprehensibility

In reversing the Utah Supreme Court, the United States Supreme Court in

*Campbell* applied the guideposts outlined in *Gore*. With regard to the first guidepost, reprehensibility, the court noted that:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.,* 123 S.Ct. at 1521. The presence of only a single factor may not support a punitive damages award, and an absence of all factors "renders any award suspect." *Id.* Further, the Court also noted that "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*

As applied to the case at bar, the court finds that the punitive damages awarded by the jury reflected a finding of reprehensibility that was constitutionally permissible. In particular, there was evidence presented at trial concerning repeated inappropriate comments that were directed toward plaintiff, as well as inappropriate touching of plaintiff by employees of defendant. Further, testimony was presented indicating that when plaintiff complained of harassment to Todd Shreeves, an employee with supervisory authority, he did absolutely nothing in response, telling plaintiff "that's just John." Finally, there was testimony presented that plaintiff, as well as other employees of defendant, had never been informed of defendant's "open door" policy for the reporting of sexual harassment

complaints. That the jury believed this testimony and found defendant's conduct sufficiently reprehensible as to be penalized by a punitive damages award of $290,000 is rational given the evidence presented at trial.

 Moreover, it is important to note that defendant had notice that it could be subjected to punitive damages at the statutory maximum "for involvement in discriminatory practices with malice or with reckless indifference to an individual's federally protected rights, by virtue of the plain language of Title VII itself." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, (10th Cir.2000) (citing 42 U.S.C. § 1981a(b)(1)). This distinguishes the jury's finding of reprehensibility in this case from punitive damages awards in other cases, such as *Campbell* and *Gore,* in which the potential liability arose from tort or fraud claims that are not similarly curtailed by statute. In addition, the Tenth Circuit held that when, as here, a punitive damages award exceeds § 1981a(b)'s cap:

> [T]he district court shall reduce the amount so that it conforms to the statutory cap. The statutory cap is not the limit of a damages spectrum, within which the judge might recalibrate the award given by the jury .... To treat it as such would be to invade the province of the jury, something explicitly contrary to the purposes of 1981a.....Thus, only when an award would "shock the judicial conscience, and constitute a denial of justice," for example because it would "result in the financial ruin of the defendant" or "constitute a disproportionately large percentage of a defendant's net worth," will we reduce the award below the statutory cap.

*Id.* at 1273 (citations omitted).

The court finds that the $290,000 punitive damage award neither shocks the judicial conscience nor constitutes a denial of

justice, given the conduct alleged to have taken place. Application of the statutory maximum is therefore appropriate. The court finds that the jury's verdict adequately reflects the degree of reprehensibility of defendant's conduct.

### b. Ratio of Compensatory and Punitive Damages

With regard to the second *Gore* guidepost, ratio between compensatory and punitive damages, the Court in *Campbell* stated:

[W]e have been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award.... We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. In *[Pacific Mutual Life Insurance Co. v.] Haslip,* in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S. 1 at 23–24[, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991)]. We cited that 4–to–1 ratio again in *Gore*. 517 U.S. at 581[, 116 S.Ct. 1589]. The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish. *Id.* at 581[, 116 S.Ct. 1589]. While these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in

range of 500 to 1, *id.,* at 582[, 116 S.Ct. 1589]. or, in this case, of 145 to 1.

*Id.,* 123 S.Ct. at 1525 (some internal citations omitted). The Court continued, noting that:

Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages." *Ibid.; see also ibid.* (positing that a higher ratio might be necessary where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine"). The converse is also true, however. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee. The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.

In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.

*Id.* (emphasis added).

Though *Campbell* guides this court to conclude that a ratio above 100:1 likely is constitutionally excessive, while a single-digit ratio likely is constitutionally permissible, it offers no bright line standard by which to determine whether the ratio in this case, 29:1, is constitutional. The Court recognized the possibility that particularly egregious conduct which happened to cause little actual economic damage may support a higher ratio of punitive to compensatory damages. Along these lines, in *Deters,* the Tenth Circuit affirmed

a punitive damages award representing a 59:1 ratio as constitutionally permissible, noting that, in a sexual harassment case, injury is "primarily personal" and therefore may be difficult to quantify, thus justifying a greater ratio. 202 F.3d at 1273.

Given the evidence at trial, it was reasonable for the jury to have concluded that, although plaintiff incurred little economic damage, a punitive damage award of this size was appropriate in order to punish defendant and to deter others from engaging in similar conduct. The court finds that the ratio of $290,000 in punitive damages to $10,000 in compensatory damages awarded in this case is both reasonable and proportionate to the amount of injury plaintiff sustained and to the amount of actual damages awarded.

### IV. Order

**IT IS THEREFORE ORDERED THAT** plaintiff's Motion for Attorney Fees and Related Non–Taxable Expenses (Doc. 103) is granted. Plaintiff is awarded attorney's fees and non-taxable costs in the amount of $53,430.95.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Amend Judgment (Doc. 104) is granted. The judgment entered in this case on March 17, 2003, is hereby amended. Plaintiff is awarded $10,000 in compensatory damages and $290,000 in punitive damages.

**IT IS FURTHER ORDERED THAT** defendant's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or Remittitur (Doc. 105) is denied.