No. 2--04--0145

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

LOWE EXCAVATING COMPANY, ) Appeal from the Circuit Court 

) of McHenry County.

Plaintiff-Appellee and )

Cross-Appellant,
 )

)

v. ) No. 88--CH--0034

)

INTERNATIONAL UNION OF )

OPERATING ENGINEERS LOCAL )

No. 150, )

) Honorable

Defendant-Appellant and ) Michael J. Sullivan,

Cross-Appellee.
 ) Judge, Presiding.

______________________________________________________________________________

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, International Union of Operating Engineers Local No. 150 (the Union)
, 
appeals from the January 12, 2004, and April 16, 2004, orders of the circuit court of McHenry County awarding the plaintiff, Lowe  Excavating Co., $525,000 in punitive damages.  On appeal, the Union argues that punitive damages were inappropriate and, alternatively, that the amount awarded was excessive.  Lowe Excavating cross-appeals from these same orders, arguing that the amount awarded was inadequate.

I. BACKGROUND

The facts of the present case are well known by the parties and this court.  Therefore, we present a brief outline of the procedural history of this case and dispense with a lengthy recitation of the facts.  Any additional necessary information will be included in the discussion portion of our disposition.

In February 1988, the defendant began picketing one of the plaintiff's jobsites with placards stating:

"NOTICE TO THE PUBLIC

LOWE EXCAVATING DOES NOT PAY THE PREVAILING WAGES 

AND ECONOMIC BENEFITS FOR

OPERATING ENGINEERS WHICH ARE STANDARD IN THE AREA

OUR DISPUTE CONCERNS ONLY SUBSTANDARD 

WAGES AND BENEFITS PAID BY THIS COMPANY

LOCAL 150

International Union of Operating Engineers, AFL-CIO"

On February 17, 1988, Lowe Excavating initiated a cause of action.  It its first complaint, Lowe Excavating alleged a cause of action for tortious interference with a prospective economic advantage.  Lowe Excavating sought injunctive and mon
etary relief.  
Lowe Excavating later amended its complaint to allege causes of action for trade libel, tortious interference with a contractual relationship, tortious interference with a prospective economic advantage, and negligent interference with a contract.  
On October 11, 1988, the trial court denied Lowe Excavating's request for an injunction as being preempted by federal law.  On interlocutory appeal, this court reversed the trial court's decision, determining that federal preemption did not apply.  We remanded for a hearing.  See 
Lowe Excavating Co. v. International Union of Operating Engineers
 Local No. 150
, 180 Ill. App. 3d 39 (1989) (hereinafter 
Lowe I
).

On April 2, 2000, this matter proceeded to a bench trial.  On October 19, 2000, the trial court found in favor of the Union on all counts.  Lowe Excavating appealed.  On appeal, this court reversed the ruling of the trial court, finding that Lowe Excavating had proved its cause of action for trade libel.  
This court found that the Union's statements were false and were made with actual malice.  We remanded the cause and instructed the trial court to determine whether punitive damages were appropriate.  We also instructed the trial court to consider Lowe Excavating's attorney fees in the event that it awarded punitive damages. See 
Lowe Excavating Co. v. International Union of Operating Engineers Local No. 150
, 327 Ill. App. 3d 711 (2002) (hereinafter 
Lowe II
).

On August 15, 2003, upon remand and direction from this court, Lowe Excavating filed a motion seeking punitive damages.  Lowe Excavating attached to its motion the affidavits of Marshall Lowe, the president of Lowe Excavating, and Gerard Smetana and Michael Avakian, attorneys for Lowe Excavating.  Smetana's affidavit provided that his firm had expended 1,288 billable hours totaling $304,101.62 on the case.  Avakian's affidavit provided that his firm had expended 843 billable hours totaling $194,350 on the case.  Avakian's firm had also expended $8,108.16 in various expenses.  Lowe's affidavit provided that his company had thus far paid $225,925.83 in fees and expenses on the case.

On January 12, 2004, the trial court entered an order awarding Lowe Excavating $325,000 in punitive damages.  The trial court explained its rationale in fashioning the amount of the award:

"3. The imposition of punitive damages against the [d]efendant is justified in this case because the appellate court found that the evidence in this case established that the [d]efendant's actions constituted actual malice.***

* * *

6. Considering the evidence in this case, the Court believes that punitive damages should be awarded to deter defendant and others from similar conduct in the future.  Specifically, the [c]ourt is referring to the conduct delineated by the Appellate Court on pages 722 and 723 of 
LOWE II
.

7. The amount of actual damages in the case is small, $4,680, but there is evidence that the [p]laintiff has incurred substantial attorney's fees and expenses in this protracted litigation.  In an affidavit from Marshal Lowe dated August 13, 2003, Marshall Lowe stated that the Lowe Excavating Company had actually paid $225,925.83 in attorney's fees and expenses [and] that further fees and expenses had been incurred, but not yet paid. ***

8. Additionally, there has been an affidavit submitted by Attorney Gerard C. Smetana dated August 13, 2003 and Attorney Michael E. Avakian dated August 14, 2003 which reflect time records of billable hours and attorney fee hourly rate [
sic
] showing $301,104.62 and $194,350.00 respectively for these two attorneys.  According to the affidavit of Attorney Avakian, the $194,350.00 in attorney fees plus expenses were not paid by the [p]laintiff, but were incurred by an entity identified as 'the Center on National Labor Policy, Inc.' which entity is not a party to this lawsuit.  There is no indication that the 
[
p]laintiff is responsible for payment of the $194,350.00 in attorney's fees plus expenses.

9. While the [c]ourt is considering [p]laintiff's attorney's fees as directed by the Appellate Court, this Court is not awarding attorney's fees, but is considering [p]laintiff's attorney's fees as a factor in the assessing of punitive damages."

On January 20, 2004, Lowe Excavating filed a posttrial motion entitled "Plaintiff's Motion for Partial Reconsideration and Modification of Order on Punitive Damages."  On February 9, 2004, before the trial court ruled on Lowe Excavating's motion for reconsideration, the Union filed a notice of appeal.  On February 19, 2004, Lowe Excavating filed its notice of cross-appeal.

On February 24, 2004, the trial court conducted a hearing on Lowe Excavating's posttrial motion.  The trial court granted the motion and increased Lowe Excavating's award of punitive damages by $200,000, from $325,000 to $525,000. The trial court explained that it was now taking into account the fees billed by Attorney Avakian, notwithstanding the fact that those fees were incurred by the Center on National Labor Policy
.  Thereafter, on March 5, 2004, the Union filed a posttrial motion entitled "Local 150's Motion for Reconsideration of Punitive Damage Awards," to which, on March 26, 2004, Lowe Excavating responded.  On April 16, 2004, the trial court made its final ruling on the matter.  It denied the Union's motion to reconsider.

On November 18, 2004, this court dismissed the appeal and cross-appeal because the parties' notices of appeal were filed prematurely, before the trial court had disposed of Lowe Excavating's pending posttrial motion. 
 On March 30, 2005, the Illinois Supreme Court entered a supervisory order directing us to reinstate the appeals and consider the case on the merits.  
In compliance with the supreme court's directive, we discuss the merits of the parties' appeals.

II. 
DISCUSSION

On appeal, the Union's two primary arguments are that (1) punitive damages should not have been imposed; and (2) the amount of punitive damages awarded was excessive.  We first address the Union's contention that punitive damages were not appropriate in this case.

Punitive damages may be awarded when torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for others.  
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 80-81 (1994), citing 
Kelsay v. Motorola
, 74 Ill. 2d 172, 186 (1978).  
Punitive damages are similar to criminal penalties.
 
 
Proctor v. Davis
, 291 Ill. App. 3d 265, 285 (1997).  The purpose of punitive damages
 is to punish the defendant for his reprehensible conduct and to deter the defendant and others from committing like offenses.  
Franz v. Calaco Development Corp.
, 352 Ill. App. 3d 1129, 1137 (2004)
; 
Kemner v. Monsanto Co.
, 217 Ill. App. 3d 188, 198 (1991).  Because of their penal nature, punitive damages are not favored in the 
law, and courts must be cautious in seeing that they are not improperly or unwisely awarded.
  
Cruthis v. Firstar Bank, N.A.
, 354 Ill. App. 3d 1122, 1133 (2004).

Review of a trial court's decision to award punitive damages following a bench trial is generally threefold. 
 
Franz
, 352 Ill. App. 3d at 1137.
  The first step is whether punitive damages are available as a matter of law for the particular cause of action.  
Franz
, 352 Ill. App. 3d at 1137. 
 This question is reviewed 
de
 
novo
.  
Franz
, 352 Ill. App. 3d at 1137. 
 The next step is whether 
the defendant acted fraudulently, maliciously, or in some other outrageous manner such as to warrant punitive damages.  
Franz
, 352 Ill. App. 3d at 1137-38. 
 This question is one of fact and is reviewed 
against the manifest weight of the evidence.  
Franz
, 352 Ill. App. 3d at 1138. 
 Finally, the trial court's ultimate decision to impose punitive damages is reviewed for an abuse of discretion.  
Franz
, 352 Ill. App. 3d at 1138.

We now apply these principles to the instant case.  As to the first step, we note that our supreme court has not explicitly determined whether punitive damages are available as a matter of law in a defamation action.  See 
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 110 (1996).  However, several appellate court cases have determined that punitive damages are available in such an action.  See 
Krasinski v. United Parcel Service, Inc.
, 208 Ill. App. 3d 771, 773 (1991); 
Moore v. Streit
, 181 Ill. App. 3d 587, 592 (1989); 
Brown v. Farkas
, 158 Ill. App. 3d 772, 780 (1986).  In light of these cases, we hold that punitive damages may be awarded in a defamation action.

We need not undertake the second step.  In 
Lowe II
, this court found that the Union had acted with actual malice.  This is now the "law of the case."  The law-of-the-case doctrine provides that an issue of law decided on appeal is binding on the circuit court on remand and on the appellate court on subsequent appeal.  
Continental Insurance Co. v. Skidmore, Owings & Merrill
, 271 Ill. App. 3d 692, 696 (1995).

" 'Where the Appellate Court *** on the first appeal to it, announces a particular view of the law governing the case and reverses and remands the case for further proceedings in accordance with the views announced, if the case is again brought before such court for review the former decision is binding on the court making it, and the questions decided and determined by it on the first appeal are not open for re-consideration on the second appeal.' "  
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291, 312 (1981), 
quoting 
Zerulla v. Supreme Lodge Order of Mutual Protection
, 223 Ill. 518, 520 (1906).

There are two exceptions to the law-of-the-case doctrine, neither of which applies here. 
 "The first exception is 
when a higher reviewing court, subsequent to the 
lower reviewing court's decision, makes a contrary ruling on the same issue."  
Martin v. Federal Life Insurance Co.
, 268 Ill. App. 3d 698, 701 (1994).  The second exception allows a reviewing court to depart from its previous decision if it finds that it was palpably erroneous, but only if the cause was remanded for a new trial on all the issues.  
Martin
, 268 Ill. App. 3d at 701.  
The rationale of this second exception is that the appellate court, on the second appeal, would be reaching a different decision based on a new and different trial.  
Martin
, 268 Ill. App. 3d at 701.
  
Because neither of these exceptions is applicable, we proceed directly to the third step.

We do not find that the trial court's decision to award punitive damages in this case was an abuse of discretion.  As noted above, punitive damages are penal in nature and serve the purposes of punishment and specific and general deterrence.  
Franz
, 352 Ill. App. 3d at 1137.
 
 The record here reveals that the trial court considered the evidence and arguments offered by both parties and, after doing so, imposed punitive damages upon the Union for appropriate reasons.  Particularly, the trial court found that punitive damages were necessary to punish the Union for its malicious conduct and to deter the Union and others from committing similar conduct in the future.  Because punitive damages were imposed for appropriate reasons, we decline to disturb the trial court's decision to impose them.

The Union's next contention on appeal is that the trial court's punitive damages award was excessive.  The Union first asserts a common-law challenge that the award was excessive.  The Union next poses a constitutional challenge that the award was excessive.  We will start with the Union's common-law challenge.

Following a bench trial, a reviewing court examines the trial court's computation of punitive damages, applying an abuse-of-discretion standard.  
Franz
, 352 Ill. App. 3d at 1138.
 
 Relevant factors a trial court may consider in fashioning its award are the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant.  
Black v. Iovino
, 219 Ill. App. 3d 378, 393 (1991).  These factors are not exclusive, and in fact, each case should be judged by its own unique set of facts.  
Black
, 219 Ill. App. 3d at 393; 
E. J. McKernan Co. v. Gregory
, 252 Ill. App. 3d 514, 536 (1993)
.  
Illinois law permits a trial court to consider the opposing parties' attorney fees in fashioning a punitive damages award.  See 
Lowe II
, 
327 Ill. App. 3d at 725
; 
E. J. McKernan Co.
, 252 Ill. App. 3d at 536.  Nonetheless, because the calculation of punitive damages is a matter of trial court discretion, a reviewing court may not alter the award unless it is the result of " 'passion, partiality or corruption.' "  
Levy v. Markal Sales Corp.
, 268 Ill. App. 3d 355, 379 (1994), quoting 
Deal v. Byford
, 127 Ill. 2d 192, 204 (1989); 
E. J. McKernan Co.
, 252 Ill. App. 3d at 536
.

We do not find that the trial court abused its discretion in calculating the award.  Nothing in the record suggests that the trial court's award was the product of passion, partiality, or corruption.  In fashioning its award, the trial court carefully considered the nature and enormity of the wrong and attempted to fashion an amount sufficient to deter the Union and others from committing similar offenses in the future.  The trial court also took into account attorney fees that were incurred by Lowe Excavating in prosecuting its claim.

The Union points out that the trial court also considered attorney fees that were generated by Lowe Excavating's three unsuccessful claims and fees that were incurred by 
the Center on National Labor Policy
.  The Union argues that considering the attorney fees generated from the unsuccessful claims and incurred by a third party was error. We disagree that the trial court's consideration of all the attorney fees in this case resulted in common-law error.

In multiple-count law suits such as the case at hand, attorney fees and costs generated on the various counts are often very intertwined and difficult, if not impossible, to separate.  With respect to the attorney fees incurred by the third party, we agree with the trial court that they were relevant. Even though they were not paid for by Lowe Excavating, they were still incurred by someone.  It is important to keep in mind that the trial court's award of punitive damages was not an award of attorney fees and was not fashioned to compensate Lowe Excavating for its attorney fees.  The punitive damages award was fashioned to punish the Union and deter the Union and others.  Attorney fees were merely one factor the trial court considered in fashioning the award.  See 
Hazelwood v. Illinois Central Gulf R.R.
, 114 Ill. App. 3d 703, 711-12 (1983).

We are now brought to the Union's argument that the punitive damages awarded were unconstitutionally excessive.  Even though the trial court's award withstands the Union's common-law challenge, the award must still pass constitutional muster as explained in the United States Supreme Court cases, 
BMW of North America, Inc. v. Gore
, 517 U.S. 559, 134 L. Ed. 2d 809, 116 S. Ct. 1589 (1996), and 
State Farm Mutual Automobile Insurance Co. v. Campbell
, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003).  In 
Gore
, the Supreme Court proclaimed that grossly excessive punitive damages were unconstitutional, in violation of the due process clause of the fourteenth amendment to the United States Constitution.  
Gore
, 517 U.S. at 562, 134 L. Ed. 2d at 818, 116 S. Ct. at 1592. 
 The 
Gore
 Court instructed courts reviewing punitive damages awards to consider 
three guideposts: (1) the degree of 
reprehensibility
 of the defendant's misconduct; (2) the disparity between 
the actual or potential harm suffered by the plaintiff and the 
punitive damages
 award; and (3) the difference between the 
punitive damages
 award and the civil penalties authorized or imposed in comparable cases.  
Gore
, 517 U.S. at 575, 134 L. Ed. 2d at 826, 116 S. Ct. at 1598. 
 The 
Campbell
 Court reiterated the principles espoused in 
Gore
 and 
further instructed reviewing courts to use the 
de
 
novo
 standard of review.  
Campbell
, 538 U.S. at 418, 155 L. Ed. 2d at 601, 123 S. Ct. at 1520.

The most important of the three guideposts is the degree of reprehensibility.  
Gore
, 517 U.S. at 575, 134 L. Ed. 2d at 826, 116 S. Ct. at 1599; 
Campbell
, 538 U.S. at 419, 155 L. Ed. 2d at 602, 123 S. Ct. at 1521.
 
 Courts should determine the degree of reprehensibility by considering whether: the harm imposed was physical, as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit.  
Gore
, 517 U.S. at 576-77, 134 L. Ed. 2d at 827, 116 S. Ct. at 1599; 
Campbell
, 538 U.S. at 419, 155 L. Ed. 2d at 602, 123 S. Ct. at 1521.

Several factors in this case heighten the degree of reprehensibility of the Union's conduct.  First, the target of the Union's conduct, Lowe Excavating, was financially vulnerable.  The record reveals that Lowe Excavating is a small excavating contractor.  At the point in time in question, Lowe Excavating employed only 
16 operators and apprentices combined.  Certainly, reputation is very important to the continued success of a small business, as small businesses thrive on repeat customers and continued relationships.  The Union's false allegations against Lowe Excavating were potentially devastating to Lowe Excavating's reputation and could have financially ruined the company.  We note that because of the Union's false allegations,
 the general contractor of the picketed jobsite, FAMCO, removed Lowe Excavating from the project and ceased doing business with Lowe Excavating for a time.

Second, contrary to the Union's argument, the conduct was not isolated.  It was repeated.  
The record reveals that the Union picketed with false information from February 15, 1988, until June 30, 1988, and then again from September 28, 1988, until October 11, 1988.  The Union continued to picket even after it was informed that Lowe Excavating was working on a federally funded project and its payroll had been certified and sent to the Department of Labor.  Finally, the Union's conduct was the product of intentional malice.  As noted above, this court made that determination in 
Lowe II
.  We reasoned that the Union had been notified that the picketed project was a federally funded project and, thus, that Lowe Excavating had to have been paying prevailing union wages. Additionally, the Union had been notified that Lowe Excavating's payroll had been certified and sent to the Department of Labor.  We again decline to alter the law of the case with regard to the malice finding.

We now turn to the second guidepost, the disparity between 
the actual or potential harm suffered by the plaintiff and the 
punitive damages
 award.  
With regard to this guidepost, the 
Campbell
 Court instructed that few awards exceeding a single-digit ratio will pass constitutional muster.  
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 605-06, 123 S. Ct. at 1524.
 
 The 
Campbell
 Court encouraged courts to consider awarding double, treble, or even quadruple punitive damages. 
 Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 606, 123 S. Ct. at 1524.
 
 However, the 
Campbell
 Court instructed that ratios of punitive to compensatory damages of 2 to 1, 3 to 1, and 4 to 1 were not binding.  
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 606, 123 S. Ct. at 1524.

In fact, the 
Campbell
 Court 
provided courts with a caveat that there was no bright-line rule as to whether a punitive damages award was excessive.  
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 605, 123 S. Ct. at 1524.
 
 The 
Campbell
 Court explained:

"Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'  [
Gore
, 517 U.S. at 582, 134 L. Ed. 2d at 831, 116 S. Ct. at 1602; see also 
Gore
, 517 U.S. at 582, 134 L. Ed. 2d at 831, 116 S. Ct. at 1602
] 
(positing that a higher ratio 
might
 be necessary where 'the injury is hard to detect or the monetary value of the noneconomic harm might have been difficult to determine').  The converse is also true, however.  When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.  The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff."  (Emphasis in original.)  
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 606, 123 S. Ct. at 1524.

In sum, the 
Campbell
 Court carved out several instances where a ratio exceeding 10 to 1 may be appropriate: (1) where a particularly egregious act has resulted in small amount of economic damages; (2) where the injury is hard to detect;
 and (3) where the monetary value of the harm is difficult to determine.  See 
Park v. Mobil Oil Guam, Inc.
, No. CVA03--001 (Guam November 16, 2004), citing 
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 606, 123 S. Ct. at 1524.

In this case, the ratio of punitive damages, $525,000, to compensatory damages, $4,280, is approximately 115 to 1.  Defamation actions, like in the present case, involve injury to reputation.  Injury to reputation may result in a small amount of economic damages.  The value of such damage is hard to determine.  The injury itself is even hard to detect. Thus, we believe that the trial court was justified in exceeding a single-digit ratio.  In fact, a punitive damages award in the single-digit ratio would be so paltry in this case that the Union, with all of its assets, would hardly be punished or deterred.  That said, we believe that 115 to 1 is an exceedingly disproportionate ratio.  Courts in other jurisdictions have struck down similar and even smaller ratios.  See 
Atkinson v. Orkin Exterminating Co.
, 361 S.C. 156, 604 S.E.2d 385 (2004) (finding that a ratio of 127 to 1 was constitutionally suspect); 
Blust v. Lamar Advertising Co.
, 157 Ohio App. 3d 787, 813 N.E.2d 902 (2004) (finding that a ratio of 70 to 1 was constitutionally suspect); 
Roth v. Farner-Bocken Co.
, 667 N.W.2d 651 (S.D. 2003) (finding that a ratio of 20 to 1 was constitutionally suspect); 
Grefer v. Alpha Technical
, No. 2002--CA--1237 (La. App. March 31, 2005) (finding that a ratio of 18 to 1 was constitutionally suspect).

Given the unique facts of the instant matter, we believe that a ratio in the double-digit range would have been more appropriate than a ratio in the triple-digit range.  Courts in other jurisdictions have upheld ratios in the double-digit range, where, as here, the damage was primarily noneconomic and a small amount of compensatory damages was awarded.  In 
Routh Wrecker Service, Inc. v. Washington
, 335 Ark. 232, 980 S.W.2d 240 (1998), the plaintiff was awarded $1,000 in compensatory and $75,000 in punitive damages on his abuse of process claim.  The Arkansas Supreme Court upheld the 75 to 1 ratio, reasoning in part that the defendant's act resulted in only 
a small amount of economic damages.  
Routh
, 335 Ark. at 242, 980 S.W.2d at 245. 
 Similarly, in 
Deters v. Equifax Credit Information Services, Inc.
, 202 F.3d 1262 (10
th Cir. 2000), the plaintiff was awarded $5,000 in compensatory and $290,000 in punitive damages on her sexual harassment claim.  The United States 
Court of Appeals, Tenth Circuit, upheld the 59 to 1 ratio, reasoning that the plaintiff's injury was primarily personal or noneconomic.  
Deters
, 202 F.3d at 1272-73. 
 Additionally, in 
Jones v. Rent-A-Center, Inc.
, 281 F. Supp. 2d 1277 (D. Kan. 2003), the plaintiff was awarded $10,000 in compensatory and $290,000 in punitive damages on her sexual harassment claim.  The United States District Court, District of Kansas, upheld the award, citing that the plaintiff's injury was primarily personal and difficult to quantify.  
Jones
, 281 F. Supp. 2d at 
291.

Finally, we believe that the third guidepost, the disparity between the punitive damages award and the civil penalties authorized in comparable cases, calls for a reduction of the trial court's punitive damages award.  In examining other defamation actions in Illinois, this court has been unable to find another award even close to the one-half million dollars awarded here.  See, 
e.g.
, 
Girsberger v. Kresz
, 261 Ill. App. 3d 398 (1993) (affirming an award of $50,000); 
Owens v. CBS, Inc.
, 173 Ill. App. 3d 977 (1988) (affirming an award of $280,000).

Taking into account all of the 
Gore
 and 
Campbell
 principles, we believe that a reasonable and constitutionally acceptable amount of punitive damages to be awarded in this case is $325,000, the amount that the trial court originally awarded.  Although we do not believe that the trial court committed common-law error when it considered the attorney fees generated by 
the Center on National Labor Policy
, we believe that the consideration of those fees resulted in a punitive damages award that violated the Union's right to due process.  An award of $325,000 takes into consideration a reasonable amount of attorney fees expended by Lowe Excavating in prosecuting its claim and is ample to punish the Union and deter the Union and others from committing future like acts.  Such an award also results in a constitutionally acceptable ratio of approximately 75 to 1.

On a final note, our award in this case is not meant to establish a bright-line ratio by which punitive damages 
must be set.  We reiterate that the constitutional line is not marked by a simple mathematical formula and that each case must be judged according to its particular facts.  See 
Gore
, 517 U.S. at 568, 134 L. Ed. 2d at 822, 116 S. Ct. at 1595; 
Campbell
, 538 U.S. at 425, 155 L. Ed. 2d at 606, 123 S. Ct. at 1524.

III. CONCLUSION

In sum, we reduce the trial court's award of punitive damages from $525,000 to $325,000, the former amount being unconstitutionally excessive when applying the principles articulated in 
Gore 
and 
Campbell
.  In light of this ruling, we need not address Lowe Excavating's contention on cross-appeal that the amount of punitive damages awarded was inadequate.

For the foregoing reasons, 
the judgment of the circuit court of McHenry County is affirmed as modified.

Affirmed as modified.

BOWMAN and KAPALA, JJ., concur.